IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MICHAEL A. LOPEZ, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

    CASE NO.:

PROGRESSIVE SELECT
INSURANCE CO.,

    Defendant.

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Progressive Select Insurance Company ("Progressive Select" or "Defendant"), pursuant to 28 U.S.C. §§ 1441, 1453 and 1446, removes to this Court the action described below.[1] This Court has jurisdiction over the claims asserted therein pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d).

### Background and Plaintiff's Allegations

1.    This action was filed on or about June 28, 2018, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, styled as *Michael A. Lopez, on behalf of himself and all others similarly situated v. Progressive Select Insurance Co.*, Case No. CACE 18-015669 (the "State Court Action").

---

[1] Pursuant to 28 U.S.C. § 1446(a), Progressive Select attaches: (a) as **Exhibit 1**, a copy of the Complaint served upon it; and (b) as **Composite Exhibit 2**, a copy of all other process and pleadings served on Progressive Select in the State Court Action. A true and correct copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, in accordance with the provisions of 28 U.S.C. § 1446(d), along with a Notice of the filing, a copy of which will be served on Plaintiff.

2. Progressive Select was served with a Summons and the Complaint on July 9, 2018. Thus, this Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446.[2]

3. Plaintiff Michael A. Lopez ("Plaintiff") filed this suit on behalf of himself and two putative classes. The first putative class (the "Putative ACV Class") is made up of all individuals insured under Progressive Select's personal motor vehicle insurance Policies issued in Florida who submitted comprehensive and/or collision claims for a total loss vehicle to Progressive Select, and for which Progressive Select determined the Actual Cash Value or "ACV" of the insureds total loss vehicles with the assistance of a third-party software program that Progressive Select purchases from Mitchell International, Inc. called WorkCenter Total Loss ("WCTL"). Compl. ¶ 74. The second putative class (the "Putative Salvage Class") is made up of all individuals insured under Progressive Select's personal motor vehicle insurance Policies issued in Florida who submitted comprehensive and/or collision claims for a total loss vehicle to Progressive Select, and for which Progressive Select took ownership of the putative class members' total loss vehicle without additionally compensating the insured the agreed or appraised value for the vehicle as salvage. *Id*.

4. Plaintiff alleges that Progressive Select's use of WCTL violated Plaintiff's policy of insurance with Progressive Select as well as Florida law. *Id*. ¶¶ 34-41. Plaintiff also alleges that Progressive Select violated its policy of insurance with Plaintiff by allegedly failing to pay the agreed or appraised value for Plaintiff's total loss vehicle after it was determined a total loss and the ownership in the vehicle transferred to Progressive Select. *Id.* ¶¶ 53-58.

---

[2] While the case was pending in state court, the Parties agreed that Progressive Select shall have through and including August 29, 2018, to respond to the Complaint. The email agreement is attached as **Exhibit 4**. Progressive Select will promptly file a consent motion for the Court's consideration to effect this agreed extension in federal court.

5. Based on these legal theories, Plaintiff asserts two claims against Progressive Select: Count I, for declaratory judgment on behalf of the class; and Count II, for breach of contract on behalf of Plaintiff individually.

6. As to Count I – Declaratory Judgment, Plaintiff alleges that, Plaintiff: (a) "believes the Mitchell WorkCenter Total Loss valuation method including [the] algorithm Defendant systematically relied on was flawed and generated invalid deductions in actual cash value payments to Plaintiff and Class Members in violation of the Policy and Florida law," *Id.* ¶ 89; (b) "believes these deductions violated Section 626.9743, Florida Statutes (whose terms are incorporated into the Policy) for Plaintiff and each Class Member," *id.*; and, (c) "believes that Defendant was required under the Policy to pay Class Members and Plaintiff the 'agreed or appraised value[s]' of their vehicles as salvage in consideration for taking title to them," *id.*

7. On behalf of himself and on behalf of each putative class, Plaintiff seeks a declaration that:

   a. "under Section 626.9743, Florida Statutes, the Mitchell WorkCenter Total Loss valuation method including the report it generated that Defendant relied on was not a 'generally recognized used car industry source,'" *id.* at p. 18;

   b. "the Mitchell WorkCenter Total Loss valuation method including the report it generated was not a valid method of determining actual cash value under the Policy and Florida law," *id.*;

   c. "Defendant could not utilize the Mitchell WorkCenter Total Loss valuation method including the report it generated to calculate actual cash value to pay total loss claims of Plaintiff and Class Members under the Policy or Florida law," *id.* at p. 19;

3

    d. "under Section 626.9743, Florida Statutes, elements of the Mitchell WorkCenter Total Loss method leading to deductions from total value in the Mitchell Report of Plaintiff and each Class Member must have been fully disclosed and 'must [have been] itemized and specified in appropriate dollar amounts,'" *id.*;

    e. "Florida law and Defendant's Policy did not permit Defendant to deduct dealer overhead and profit from actual cash payments on total loss claims under the Policy and such deduction was a breach of the Policy," *id.*; and,

    f. "under the Policy Defendant was required to pay Plaintiff and Class Members the agreed or appraised salvage value in consideration for taking title to their vehicles," *id.*

8. In addition to the declaration, Plaintiff also seeks on behalf of himself and on behalf of each putative class, "supplemental relief," *i.e.*, an order "requiring Defendant provide notice to all Class Members regarding the rulings, findings, declarations in this matter and their legal rights with respect to Defendant's improper interpretation of the Policy and related Florida law." *Id.*

9. Plaintiff also seeks attorney's fees and costs on behalf of the classes.

### This Court Has Jurisdiction Over This Action Under CAFA

10. This action is removable to this Court, and this Court has jurisdiction over this action, under CAFA, 28 U.S.C. § 1332, 28 U.S.C. § l441(a) and (b), and 28 U.S.C. § 1453, because (1) this is a putative class action with more than 100 putative class members, (2) there is minimal diversity among the parties; and (3) the Complaint places into controversy an amount that exceeds $5,000,000 in the aggregate.

11. CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants. To that end, CAFA provides that class actions filed in state court are removable to federal court if they meet certain basic prerequisites. Specifically, CAFA expanded federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to grant original jurisdiction where the putative class contains at least 100 class members; any member of the putative class is a citizen of a State different from that of any defendant; and the amount in controversy exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

12. This suit satisfies all of the requirements under CAFA for federal jurisdiction: (1) the putative class exceeds 100 members; (2) members of the proposed class have a different citizenship from Progressive Select; and (3) the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

### The Putative Class Exceeds 100 Members

13. CAFA requires that the class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5). That requirement is met here. While Plaintiff does not quantify the number of putative class members in the Complaint, a review of Progressive Select's records indicates that there are in excess of 50,000 purported members of the Putative ACV Class, as defined by Plaintiff, and there are in excess of 50,000 members of the Putative Salvage Class, as defined by Plaintiff. (**Exhibit 3**, Declaration of Michael Silver ¶¶ 3, 5).

### There Is Minimal Diversity Among the Parties

14. The second CAFA requirement is minimal diversity — at least one putative class member must be a citizen of a different state than any one defendant. 28 U.S.C. § 1332(d)(2).

15. Here, Plaintiff alleges that he is a citizen of the State of Florida, and Plaintiff seeks to represent a class consisting of individuals whose motor vehicles were insured under a policy of insurance issued in Florida. Compl. ¶¶ 9, 74.

16. As Plaintiff alleges, Progressive Select "is incorporated in, has a principal place of business in, and is a citizen of, a state other than Florida." Compl. ¶ 12 Progressive Select is an Ohio corporation with its principal place of business located in Ohio. *See also* Silver Decl. ¶ 2.

19. Thus, there is minimal diversity here, as the Plaintiff is a citizen of Florida, and Progressive Select is (and was at the time of the filing of the Complaint and all times intervening) a citizen of Ohio. This prerequisite of CAFA is met. 28 U.S.C.§ 1332(d)(2).

## **The CAFA Amount in Controversy Is at Least $5,000,000**

17. CAFA requires that the amount in controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2) .

18. As the United States Supreme Court has held, a defendant's notice of removal under CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*.

19. Based on Plaintiff's allegations and legal theories, the $5,000,000 CAFA amount in controversy requirement is satisfied.

20. The Eleventh Circuit's opinion in *South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312 (11th Cir. 2014), is instructive. In that case, the plaintiff alleged that the defendant-insurer violated a Florida Statute governing claims for no-fault personal injury protection insurance payments. The plaintiff sought to represent a class to pursue a declaratory

6

< Active > 46028924;1

judgment that the defendant-insurer had violated the Florida statute.  The plaintiff sought no monetary relief.

21. While the district court found that a "pure declaratory judgment action" could not satisfy the amount in controversy and remanded the action, *id.* at 1313, the Eleventh Circuit disagreed. *Id.* at 1317.  The Eleventh Circuit held that the amount in controversy was the amount the defendant-insurer allegedly should have paid if the plaintiff's interpretation of Florida law was correct. *Id.*  Even if there were "contingencies standing between any class member and recovery" following a declaratory judgment, the Eleventh Circuit held that the amount in controversy nevertheless exceeded $5,000,000.  *Id.* at 1316-17; *see also A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 16-CV-62610-Bloom/Valle, 2017 WL 35519, at *2 (S.D. Fla. Jan. 3, 2017) (relying on *South Florida Wellness* and denying a motion to remand a declaratory judgment action filed against GEICO seeking a declaratory judgment that GEICO had underpaid certain insurance claims).

22. Based on the holding in *South Florida Wellness, Inc. v. Allstate Ins. Co.,* the declaratory judgment Plaintiff seeks on behalf of the putative class places into controversy more than $5,000,000 in at least two ways (1) the value of the alleged "invalid deductions" alleged to have been applied to class members' insurance claims and (2) the value of salvage vehicles transferred to Progressive Select by class members.

*The Value of Alleged "Invalid Deductions"*

23. Plaintiff alleges that Progressive Select's use of WCTL in determining the actual cash value of class members' total loss vehicles relies on "invalid deductions." Compl. ¶¶ 48-50, 89.  Plaintiff therefore seeks a declaration that such deductions are invalid and illegal. *Id.* pp. 18-19.

7

24. Plaintiff alleges that Progressive Select made allegedly improper adjustments of this nature in determining the actual cash value of his vehicle, as reflected in the WCTL Report and Settlement Summary, which are attached as Exhibit B and Exhibit C to the Complaint. *Id.* ¶¶ 62-66.

25. Plaintiff further alleges that his claims are "typical of the claims that would be asserted by other members of the Class." *Id.* ¶ 78.

26. Plaintiff's WCTL Report included two types of challenged deductions: a "projected sold adjustment" and a "condition adjustment." *See* Compl. Ex. B.[3]

27. The actual cash value ultimately assigned by the WCTL Report was $7,234.70. If the "projected sold adjustment" were deemed invalid and removed from Plaintiff's WCTL Report, the actual cash value of his vehicle would have been $7,695.12. The difference is $460.42.

28. As a result, assuming that Plaintiff's claims are typical as he alleges, Plaintiff's challenge to the projected sold adjustment, on behalf of 50,000 or more putative ACV Class members, places at least $23,000,000 in controversy.

29. Moreover, the WCTL Report also applied a "condition" deduction of $392.12 in determining the actual cash value of Plaintiff's vehicle.

30. As a result, assuming that Plaintiff's claims are typical of the putative class members' claims, as Plaintiff alleges, Plaintiff's challenge to the condition adjustment on behalf of 50,000 or more putative ACV Class members places at least $19,600,000 in controversy.

---

[3] No projected sold adjustment was applied in determining the ACV of Vehicle 1.

31.     Plaintiff's class-wide challenge to either one of these allegedly "invalid deductions" therefore puts into controversy far more than the $5,000,000 jurisdictional minimum at issue.

*The Value of Class-Wide Salvage Vehicles*

32.     Plaintiff also seeks a declaration that Progressive Select is required to make an additional payment for the agreed upon or appraised value of salvage vehicles transferred to Progressive Select by members of the class Plaintiff seeks to represent.

33.     For vehicles transferred to Progressive Select by members of the Salvage Class, Progressive Select recovered at least $100,000,000 in sales proceeds since June 28, 2013, net of fees and other costs of sale.

34.     For this reason as well, it is evident that the $5,000,000 CAFA amount in controversy requirement is satisfied.

**This Action Is Properly Removed**

35.     Accordingly, because the CAFA prerequisites are met, this case is properly removable under CAFA.[4]

WHEREFORE, Progressive Select prays that this Court will consider this Notice of Removal as provided by law governing the removal of cases to this Court; that this Court will make the proper orders to achieve the removal of the State Court Action to this Court; and that this Court will make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause of all proceedings that may have been had in the State Court Action.

---

[4] It is also appropriate for this Court to exercise supplemental jurisdiction over Plaintiff's individual claims brought in Count II. 28 U.S.C.A. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Counsel for Defendant


*/s/ Bryan T. West*
Marcy Levine Aldrich (FBN 0968447)
Bryan T. West (FBN 83526)
**Akerman LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida  33131
Telephone: 305-374-5600
Telefax: 305-374-5095
marcy.aldrich@akerman.com
bryan.west@akerman.com

10

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed through the CM/ECF system and served by e-mail and US Mail this <u>8th</u> day of August, 2018, on:

Edward H. Zebersky
ezebersky@zpllp.com
Mark S. Fistos
mfistos@zpllp.com
ndiaz@zpllp.com
Zebersky Payne, LLP
110 S.E. 6th Street, Suite 2150
Fort Lauderdale, FL 33301

*/s/ Bryan T. West*
Bryan T. West

< Active > 46028924;1