UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:18-cv-61844-WPD

MICHAEL A. LOPEZ, on behalf of
himself and all others similarly situated,

      Plaintiff,

v.

PROGRESSIVE SELECT
INSURANCE CO.,

      Defendant.

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, MICHAEL A. LOPEZ ("Plaintiff" or "Mr. Lopez"), on behalf of himself and all others similarly situated, hereby sues Defendant, PROGRESSIVE SELECT INSURANCE COMPANY ("Defendant"), and alleges as follows:

## NATURE OF THE CASE

1.    Plaintiff and putative class members are each insureds under standardized insurance policies covering damage to motor vehicles ("Policy" or "Policies") Defendant issued to them in Florida.

2.    The insured vehicles of Plaintiff and each class member have sustained significant property damage covered under the Policy to such extent Defendant has declared each of their insured vehicles total losses, triggering its obligation to pay them the actual cash value of their vehicles to settle their total loss claims under the Policy.

3.      As set forth below, Defendant has routinely and systematically misinterpreted the Policy and Florida law; and based on the misinterpretation, it has improperly reduced the actual cash value payments to Plaintiff and class members because it based them on a statutorily impermissible method of determining actual cash value.

4.      Defendant has also routinely misinterpreted the Policy by requiring Plaintiff and each class member to transfer ownership of their total loss vehicles, without compensating Plaintiff and class members for the salvage values of those vehicles in consideration for the transfers to Defendant.

5.      In Count I, Plaintiff brings a class claim solely for declaratory relief against Defendant, on behalf of a limited number of Florida citizens to whom Defendant issued Policies and whose vehicles Defendant deemed a total loss under those Policies.

6.      In Count II, Plaintiff seeks monetary relief for breach of contract both individually and on behalf of all those similarly situated based on the Defendant's taking of Plaintiff's and class members' totaled vehicle without compensating them for the taking.

## PARTIES, VENUE, AND JURISDICTION

7.      Plaintiff is a Florida citizen, resides in this Circuit, and is *sui juris.*

8.      This case arises under Florida law, and all members of the classes or class members that Plaintiff seeks to represent in this litigation are individuals insured under Defendant's personal motor vehicle insurance Policies issued in Florida covering damage to motor vehicles.

9.      The value of the putative class claims in the aggregate exceed $5,000,000.00 exclusive of all costs and attorney's fees.

10.     Defendant is incorporated in, has a principal place of business in, and is a citizen of, a state other than Florida.

11.     Subject matter jurisdiction is proper in this action based on 28 U.S.C. § 1332.

12.     The Court has personal jurisdiction over Defendant because it markets, issues, and sells automobile insurance throughout the State of Florida, is registered to do business including transact insurance business in Florida, and is engaged in substantial, continuous, systematic, and non-isolated insurance business activity within the State of Florida, including Broward County, Florida.

13.     Venue is proper in this Court because the individual cause of action accrued here.

14.     All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.

## THE POLICY

15.     Defendant sells motor vehicle insurance that provides coverage for property damage done to a vehicle, whether by collision with another vehicle, theft of the vehicle, or from other perils.

16.     The Policy providing this property damage coverage that Defendant issued to insure Plaintiff and Class members is identified by the alphanumeric version codes including "9611D FL (07/13)."  An exemplar of the Policy is attached as **Exhibit A**.

17.     Defendant includes damage coverage in **PART IV** of the Policy, describing the "**DAMAGE TO A VEHICLE**" for the insured vehicle and payments made when certain losses occur. These coverages are called comprehensive and collision coverage respectively.

18.     For **COMPREHENSIVE COVERAGE**, the Policy provides in relevant part that Defendant "will pay for sudden, direct, and accidental loss to a **covered auto**…not caused by **collision**." Ex. A at 23 (emphasis in original).

19.     For **COLLISION COVERAGE**, the Policy provides Defendant will pay for sudden, direct, and accidental loss to a **covered auto**…caused by **collision**." Ex. A at 23 (emphasis in original).

20.     The term "property" is not defined in the Policy. But the term "property damage" is.  The Policy defines "Property damage" as "physical damage to, destruction of, or loss of use of, tangible property."  Ex. A at 2.

21.     When in the Policy Defendant refers to amounts Defendant will pay for losses to property it expressly specifies whether the losses are for stolen *or* damaged property.

22.     Under the "**LIMITS OF LIABILITY**" provision, Ex. A at 28, for both comprehensive and collision coverages, Defendant states it will pay the lowest of "the actual cash value of the stolen or damaged property at the time of the loss" or "the amount necessary to replace the stolen or damaged property…" *Id.*   This provision states in pertinent part as follows:

**LIMITS OF LIABILITY**

1.   The limit of liability for loss to a **covered auto, non-owned auto**, or **custom parts or equipment** is the lowest of:
   a.   the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b.   the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c.   the amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible; or
   d.   the Stated Amount shown on the **declarations page** for that **covered auto**;

*Id.* (Original emphasis).

23.     The Policy declaration pages indicate Defendant chooses actual cash value as its limit of liability for comprehensive and collision coverages. *See* Ex. A.[1]

24.     The Policy states in **PART IV** under the heading "**PAYMENT OF LOSS**," Defendant is to "pay for the loss in money" or "[r]epair or replace the damaged or stolen property" at its option. Ex. A at 30 (emphasis in original). It then states in that same provision, Defendant "may ***keep*** all or part of ***the property at the agreed or appraised value***," with no specification that the reference to "property" is for stolen or damaged property. *Id*. (emphasis added).  In total, this provision states as follows:

**PAYMENT OF LOSS**

**We** may, at **our** option:
1.     pay for the loss in money; or
2.     repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

*Id.* (Original emphasis).

<u>**DEFENDANT'S TOTAL LOSS SETTLEMENT PROCESS**</u>

25.     Plaintiff's and each class member's insured motor vehicle[2] sustained property damage covered under the Policy, to such extent Defendant declared the vehicle a total loss under the Policy and Defendant's obligations to pay actual cash value to Plaintiff and each class member.

---

[1]  *See also* https://www.progressive.com/claims/total-loss/ (stating in cases of total loss, Defendant pays actual cash value) (accessed June 25, 2018).

[2]  The vehicles included in this case are ones insured under the Policy and declared a total loss, even though they may be titled to another individual insured under the same Policy other than the class member insured under the Policy whose claim was at issue. The possessive case is used throughout this complaint as a convenience.

26.     For Plaintiff and each class member, Defendant undertook a routine total loss settlement process.[3]

27.     That process involved declaring the vehicle a total loss, valuation of the vehicle, and a cash settlement payment to the insured of purported actual cash value of the totaled vehicle and then taking the vehicle without compensating Plaintiff and each Class member for the taking.

*The Mitchell WorkCenter Valuation Method and Report*

28.     To determine actual cash value, for Plaintiff and each class member Defendant routinely utilized a total loss valuation database and attendant software platform and a Mitchell WorkCenter Vehicle Valuation Report or similar report ("Mitchell Report") generated from the platform.

29.     This computer platform was developed and marketed by third-party Mitchell International, Inc. ("Mitchell").

30.     Defendant has contracted with and paid Mitchell to access and use the Mitchell WorkCenter Total Loss computer platform and Mitchell Report to settle it total loss claims under the Policy.

31.     In adjusting total loss claims of Plaintiff and each class member under the Policy, Defendant adopted, relied on, and ratified the Mitchell WorkCenter Total Loss platform, its valuation method, and its Mitchell Report.

32.     Defendant regularly provided the report to Plaintiff and each class member as part of the total loss settlement process in response to their claims to explain to them the basis for the settlement in writing.

---

[3]  *See generally* https://www.progressive.com/claims/total-loss/ (accessed June 25, 2018).

33.     Defendant as a pattern and practice adopted, relied on, and ratified the total value determination stated in the Mitchell Report as the actual cash value of the vehicle declared a total loss and the basis for its cash settlements to them.   A copy of Plaintiff's report is attached and incorporated as **Exhibit B**.

*Defendant's Unlawful Reliance on an Insurance-Industry Valuation Source*

34.     Under Florida law, Florida Statues governing insurance policies and loss settlements are incorporated by operation of law into Defendant's Policy.  A violation the Policy therefore may be founded upon a violation of incorporated statutes.

35.     Defendant's Policy states that Defendant may use computer software, databases, and specialized technology to assist it in adjust claims. Ex A at 34.  But it must comply with Florida Statutes in doing so.

36.     Section 626.9743(5), Florida Statutes, authorizes use of databases to make cash payments to settle total loss claims but <u>*only when*</u> the cash settlement is based on a "*retail cost as determined from a generally recognized used motor vehicle industry*" database.  § 626.9743(5)(a)2.a., Fla. Stat. (emphasis added).

37.     The Mitchell WorkCenter Total Loss platform, which includes a database, is an insurance industry source.

38.     Mitchell develops, markets, and sells its total loss software, database, and the Mitchell Report—the Mitchell WorkCenter Total Loss method described above—almost exclusively to insurance companies for *them* to value total loss claims to reduce *their* exposure using data they request.

39.     The Mitchell WorkCenter Total Loss method was not marketed and meant to provide an objective source to be utilized in and by the used motor vehicle industry to derive the actual retail cost needed to purchase a comparable used motor vehicle.

40.     Defendant's use of the Mitchell WorkCenter Total Loss method including its database and Mitchell Report therefore violated Section 626.9743(5)(a)2.a., Florida Statutes.

41.     Moreover, when Defendant choose not to base actual cash value from a "generally recognized *used motor vehicle industry* source," it was obligated to provide added disclosures and specific explanations to Plaintiff and each Class member.

42.     Defendant was obligated to support its determinations and derivations of value in detail in disclosures to Plaintiff and Class members "*by documentation, and any deductions from value must [have been] itemized and specified in appropriate dollar amounts*." *See* § 626.9743(5)(c), Fla. Stat. (emphasis added).

43.     Also, any deductions for depreciation must have been "*itemized and specific as to dollar amount and [must have] accurately reflect[ed] the value assigned to the…depreciation*." *See* § 626.9743(6), Fla. Stat. (emphasis added).

44.     The Mitchell WorkCenter Total Loss method Defendant employed for Plaintiff and each Class members, used one or more algorithms, assumptions, and underlying data points leading to deductions for example in the "condition adjustment" of the insured's motor vehicle values, none of which were disclosed in the Mitchell Report.  Nor were they itemized and specified in appropriate dollar amounts in Mitchell Reports Defendant routinely provided to Plaintiff and each Class member to explain Defendant's valuation of the total loss vehicle it insured and its actual cash value derivations under the Policy and Florida law.

45.     As such, Defendant violated the added protections of Section 626.9743(5)(c), Florida Statutes, and Section 626.9743(6), Florida Statutes, both of which are incorporated in the Plaintiff's and each class member's Policy.

46.     Also, because the only database method allowed under Section 626.9743(5)(a)2.a., Florida Statutes, is a "generally recognized *used motor vehicle industry* source," Defendant cannot employ a non-used-motor-vehicle-industry database source to satisfy its obligations under Section 626.9743(5)(c), Florida Statutes, and Section 626.9743(6), Florida Statutes.

*Taking Plaintiff's and Class members' Totaled Vehicles without Compensation*

47.     Moreover, even though a vehicle has been declared a total loss, it still has some monetary value, which can be determined upon appraisal or by agreement.

48.     As part of the total loss settlement process, Defendant has also required its insureds, including Plaintiff and class members, to transfer ownership of their totaled vehicles to Defendant. But it has routinely done so without its providing them any form of monetary consideration attributable to the salvage value of those properties.

49.     As stated above, Defendant may "pay for the loss *in money*" to each insured at Defendant's option.  Ex. A at 30 (emphasis added).  In accordance with this provision, Defendant has opted to pay Plaintiff and class members, the "actual cash value" of their vehicles, which under Florida law and the Policy is an amount to cover the replacement cost of the totaled vehicle minus depreciation and betterment. Ex. A at 30.

50.     *In addition*, the Policy clearly states that Defendant "**may keep** all or part of *the* propert[ies]" of Plaintiff and class members —i.e., their totaled vehicles. Ex. A at 30 (emphasis added).  But if it does take them, the Policy clearly states in same sentence Defendant must pay Plaintiff and class members "at the agreed or appraised value" for that taking. *Id.*

51.     Under this provision, Plaintiff submits Defendant was required to compensate them the "agreed or appraised" salvage value of their vehicles in consideration for Defendant's taking ownership of them, which Defendant has uniformly not done.

52.     There is simply no provision in the Policy that permitted Defendant to require Plaintiff and class members to transfer ownership of their vehicles permanently to Defendant without compensation for the "agreed or appraised value" of those vehicles as salvage in exchange for transferring them to Defendant.

## FACTS RELATED TO INDIVIDUAL PLAINTIFF

53.     Plaintiff underwent this total loss settlement process.  On or about January 20, 2017, Plaintiff Mr. Lopez was involved in a motor vehicle accident which resulted in collision damage to his vehicle insured under Defendant's Policy.

54.     At all times material, Mr. Lopez had made payments of premiums under the Policy, and it was in full force and effect at the time of the accident.

55.     After the accident, Mr. Lopez timely made a claim for the damage under the Policy. Defendant covered the claim and declared the vehicle a total loss.

56.     In the settlement process, Defendant Provided Plaintiff a "Settlement Summary," showing an "actual cash value" and a balance he was allegedly due after deductions on his claim under the Policy.  This summary is attached as **Exhibit C**.

57.     The Mitchell Report Defendant provided Plaintiff is attached as Exhibit B. Defendant provided the report to Plaintiff in response to Plaintiff's claim as a written explanation of its settlement.

58.     The report took reductions from the value of his vehicle for mileage and a condition adjustment.

59.     The report was based on algorithms, assumptions, and underlying data points leading to deductions for example in a "condition adjustment" that were not disclosed and that were clearly not specified, not itemized, and not documented.

60.     Yet the total value Defendant ultimately relied on to pay Mr. Lopez actual cash value under the Policy was a total value invalidly derived by the statutorily impermissible Mitchell method stated above.

61.     In addition, as with class members, after the accident, Defendant required Mr. Lopez to transfer title of the insured vehicle to Defendant, and Defendant took the vehicle, but Defendant did not compensate Plaintiff the "agreed or appraised value" of his vehicle as salvage in exchange for his transferring it to Defendant.

### DEFENDANT'S MISCONDUCT IS WIDESPREAD AND TRACKABLE

62.     Defendant's Policy issued to insure Plaintiff and class members contained standardized pre-printed text; Defendant drafted it; and the Policy is identified by standard alphanumeric codes appearing on each Policy.

63.     Interpretation of the Policy is not dependent on the individualized factual circumstances applying to Plaintiff and each class member. Plaintiff's class claim for declaratory relief presents a question of law for the Court whose determination and resolution would apply to Plaintiff and all class members across the board.

64.     The common injury that Defendant caused Plaintiff and class members stems from a dispute over Defendant's blanket, systematic misinterpretation of the Policy and Florida law and conduct based on its standard practice regarding and related to settling total loss claims for actual cash value based on the Mitchell platform and Mitchell Report.

65.     The common injury that Defendant caused Plaintiff and class members also stems from a dispute over Defendant's blanket, systematic misinterpretation of the Policy and Florida

law and conduct based on its standard practice regarding and related to settling total loss claims and taking insureds' vehicles without compensating them for their salvages values.

66.     Upon information and belief, Defendant tracks the total loss settlement process and claims that are made under property damage coverage provisions of the Policy; tracks the total loss value it assigns to each vehicle; tracks its use of the Mitchell WorkCenter Total Loss platform and Mitchell Report; tracks payments it made to Plaintiff and each class member based on the report; and tracks the salvage value of the vehicle.

67.     Upon information and belief, Defendant's use of the Mitchell WorkCenter Total Loss valuation method and Mitchell Report is ongoing and will continue and will injure Plaintiff and class members in the future.

68.     For the first class, the "Mitchell Valuation Method Class" defined below, Plaintiff asks for a declaration whether Defendant's total loss settlement process and use of the Mitchell database, software, and Mitchell Report complied with Florida law.  If not, then Plaintiff asks this Court to award further relief and require Defendant to readjust total loss claims based on a legally permissible mechanism.

69.     For the second class, the "Takings Class" defined below, Plaintiff seeks to obtain monetary damages for this class for Defendant's taking of totaled vehicles without compensating Plaintiff and class members the salvage values of those vehicles, which is not permitted under the Policy.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff wishes to be designated as a "Class Representative," and as Class Representative brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all other persons similarly situated—defined as follows:

<u>Mitchell Valuation Method Class</u>

From five years before the filing of this complaint (the "Class Period"), all individual insured under Defendant's personal motor vehicle Policy substantially similar to Exhibit A and issued in Florida (1) who submitted a comprehensive and/or collision claim to Defendant on a vehicle covered under the Policy; (2) Defendant deemed the vehicle subject to the claim a total loss under the Policy; and (3) Defendant paid actual cash value to settle the claim, utilizing the total value stated in the Mitchell Report as the actual cash value to be paid.

<u>Takings Class</u>

From five years before the filing of this complaint until the day the Court decides class certification (the "Class Period"), all individuals insured under Defendant's personal motor vehicle Policy substantially similar to Exhibit A and issued in Florida (1) who submitted a comprehensive and/or collision claim to Defendant on a vehicle covered under the Policy; (2) Defendant settled the claim of the insured paying the insured what Defendant considered to be actual cash value for the vehicle; and (3) Defendant required the insured to arrange for transfer of ownership of the vehicle to Defendant, without Defendant's additionally compensating the insured the agreed or appraised value for the vehicle as salvage.

Plaintiff and these Class members reserve the right to amend the class definitions as discovery proceeds and to conform to the evidence.  Excluded from the classes are all members of the judiciary and persons employed by or family members of Plaintiff's counsel.

71.    <u>Numerosity (Rule 23(a)(1))</u>. Plaintiff alleges on information and belief that the number of class members in either class is so numerous that joinder of them is impractical. Plaintiff's belief is based on information indicating the number of Defendant's insureds.

72.    At this time, Plaintiff does not know the exact number of class members in either class, but the members of the classes will be easily ascertained through Defendant's records through the use of its own computer data and that of Mitchell. Indeed, a simple run of the data will uncover all claims information, including whether the claim is a total loss, whether Defendant utilized the Mitchell WorkCenter Total Loss database, software, and Mitchell Report to determine the actual cash value paid to settle the claims of Plaintiff and class members, and whether

Defendant also compensated the Takings Class member the salvage value of the vehicle in consideration for transferring title to Defendant.

73.     <u>Commonality (Rule 23(a)(2))</u>. There are common questions of law and/or fact applicable to members of the classes.  These principal common questions include the following, during the class periods stated in the class definitions:

The following common questions apply to the Mitchell Valuation Method Class:

      a.  Whether and to what extent the Mitchell WorkCenter Total Loss valuation method including the database it used is a permissible method to derive actual cash value under the Policy or Florida Law;

      b.  Whether deductions in value used in the Mitchell WorkCenter Total Loss method generating the Mitchell Report were sufficiently disclosed as required under the Policy or Florida law; and,

      c.  Whether Plaintiff and the classes are entitled to declaratory relief under Chapter 86, Florida Statutes and 28 U.S.C. § 2201.

The following common questions apply to the Takings Class:

      d.  Whether the Policy clearly and unambiguously permitted Defendant to require insureds to transfer title to total loss vehicles to Defendant, without compensating them the salvage values of the vehicles in consideration for transferring title to Defendant; and,

      e.  Whether the Plaintiff and the Takings Class are entitled to monetary damages

74.     <u>Typicality (Rule 23(a)(3))</u>.  The claims of the Class Representative are typical of the claims that would be asserted by other members of the Class in that, in proving Plaintiff's claims, Plaintiff will simultaneously prove the claims of all Class members. Plaintiff and each Class member is an insured under Defendant's standardized Policy; whose insured vehicle underwent a loss attributable to a covered comprehensive and/or collision claim, the result of which Defendant deemed the vehicle to be a total loss under the Policy; based on the Mitchell

Report, Defendant paid the insured what it deemed to be actual cash value under the Policy; and Defendant took title to the vehicle without compensating the insured the salvage value of the vehicle in consideration for transferring title to Defendant.

75.    Adequacy (23(a)(4)). Plaintiff has no conflicts of interest and will fairly and adequately protect and represent the interests of each member of the Classes.  Additionally, Plaintiff is fully cognizant of its responsibility as Class Representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action.  Each class counsel has extensive experience in class and/or insurance claims and litigation.

76.    Rule 23(b)(2). Under Count I, Defendant has acted or refused to act on grounds or in a manner generally applicable to all members of the Class, thereby making declaratory relief to the entire Class particularly appropriate.  Based on its Policy interpretation and its interpretation of Florida law, Defendant systematically made reductions to actual cash value payments to Plaintiff and Class members, relying on the Mitchell Report, and it took title to their vehicles without compensating them their salvage values.

77.    Rule 23(b)(3).  If the Classes are not certifiable under (b)(2) then they should be certified under (b)(3) because, although in Count I Plaintiff seeks no damages, any individual damage issues do not predominate over the common legal and factual issues in this matter and common questions a-c stated above predominate over any individual issues affecting individual Mitchell Valuation Method Class members.   Count II should be certified under (b)(3) because whether Defendant's conduct violates the Policy predominates over any individual issues affecting Takings Class members and the common questions d and e stated above predominate over any individual issues affecting individual Takings Class members.

78.     Rule 23(c)(4).  In the alternative, if the Court is not inclined to certify a class under Rules 23(b)(2) or (b)(3), it can certainly certify an issue class with respect to the Defendant's liability on a class-wide basis and then proceed in accordance with the Federal Rules of Civil Procedure and employ other mechanisms at its disposal with respect to individual Class members.

<u>COUNT I</u>
**DECLARATORY JUDGMENT**
**(CLASS CLAIM)**

79.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-3, 5, 7-23, 25-46, 53-60, 62-64, 66-68, 70-73 (a, b, and c), 74-78 above, as if the same were fully alleged herein and states further:

80.     All conditions precedent to this action have occurred, been satisfied, or been waived.

81.     In Count I, Plaintiff seeks no monetary relief and brings this count on his own behalf and on behalf of the Mitchell Valuation Method Class defined above. Under Count I, Plaintiff is not requesting and will not request the Court to determine the reasonableness of any claim or amounts due and owing any Mitchell Valuation Method Class member, including Plaintiff.

82.     Plaintiff, individually and on behalf of all those similarly situated, is in doubt as to his rights under Defendant's Policy, Florida law, and has an actual controversy with Defendant over the terms of its Policy and Florida law.

83.     Because of this controversy, Plaintiff is an interested party who seeks a declaration of Part IV of the Policy, describing the comprehensive and collision coverages, Section 626.9743, Florida Statutes, and Florida case law definitions of what method may properly be used to determine what constitutes actual cash value under the Policy.

84.     On one side of the controversy, Defendant has systematically and routinely used a Mitchell WorkCenter Total Loss valuation method to adjust all "total loss" claims of Plaintiff and Mitchell Valuation Method Class members, it believes complied with the Policy and Florida Law.

85.     On the other side of the controversy, Plaintiff believes the Mitchell WorkCenter Total Loss valuation method violated the Policy through violation of Section 626.9743, Florida Statutes (whose terms are incorporated into the Policy) for Plaintiff and each Mitchell Valuation Method Class member.

86.     Moreover, Plaintiff believes the Policy is a contract whose terms expressly allowed Defendant a choice of paying to replace totaled property or paying actual cash value to Plaintiff and each Class member when it declared their vehicles total losses.

87.     Defendant chose to pay them actual cash value under the provisions of the Policy.

88.     The Policy incorporated the total loss settlement provisions of Section 626.9743, Florida Statutes, which provided Defendant a similar choice to pay to replace the totaled vehicle or pay actual cash value. § 626.9743(5), Fla. Stat. Defendant chose to pay actual cash value under the statute.

89.     The Policy through incorporation of Section 626.9743(5) also permitted Defendant the choice of several methods of determining actual cash value.

90.     Under the Policy incorporating the foregoing provisions, Defendant covenanted to exercise the foregoing choices fairly and in good faith.

91.     Plaintiff believes Defendant violated this covenant because instead of choosing to employ of valid method of determining actual cash value, it chose to use an invalid one, devised in the insurance industry, which was intended to reduce Defendant's claim exposure to the detriment of Plaintiff and each Mitchell Valuation Method Class member.

92.    There is a bona fide, actual, present, practical need for the Court to declare whose interpretation of the Policy provisions and Florida law on the foregoing issues are correct.

93.    Plaintiff has interests adverse to Defendant and the declaration requested deals with a present ascertainable state of facts as presented in the allegations set forth above.

94.    Plaintiff and all putative Mitchell Valuation Method Class members are in the same predicament, each suffering an injury from what Plaintiff believes to be a misinterpretation of the Policy and Florida law.

95.    As stated above, Defendant's Policy is standardized and is generally applicable to each Mitchell Valuation Method Class member.

WHEREFORE, Plaintiff, individually and as Class Representative on behalf of the Mitchell Valuation Method Class of persons similarly situated, and pursuant to Chapter 86, Florida Statutes and 28 U.S.C. § 2201, hereby requests a declaratory judgment interpreting Florida law and the insurance Policy issued by Defendant described herein, and prays for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rule of Civil Procedure 23(b)(2) or alternatively 23(b)(3) or Rule 23(c)(4);

b.    Designating Plaintiff as representative of the Mitchell Valuation Method Class and his counsel as their counsel;

c.    Entering judgment in favor of Plaintiff and the Mitchell Valuation Method Class and against Defendant;

d.    Awarding attorney fees and costs under Section 627.428, Florida Statutes, for prosecuting this action; and,

e.    Entering declaratory judgment as follows:

1)       Declaring that under Section 626.9743, Florida Statutes, the Mitchell WorkCenter Total Loss valuation method including the report it generated that Defendant relied on was not a "generally recognized used car industry source;"

2)       Declaring that the Mitchell WorkCenter Total Loss valuation method including the report it generated was not a valid method of determining actual cash value under the Policy and Florida law;

3)       Declaring that Defendant could not utilize the Mitchell WorkCenter Total Loss valuation method including the report it generated to calculate actual cash value to pay total loss claims of Plaintiff and Mitchell Valuation Method Class members under the Policy or Florida law;

4)       Declaring that under the Policy incorporating Section 626.9743, Florida Statutes, elements of the Mitchell WorkCenter Total Loss method leading to deductions from total value in the Mitchell Report of Plaintiff and each Class member must have been fully disclosed and "must [have been] itemized and specified in appropriate dollar amounts;" and,

5)       As "further necessary or proper relief" awardable under 28 U.S.C. § 2202, require Defendant to readjust its claims of Plaintiff and Mitchell Valuation Method Class members based on a proper methodology permitted under Florida law.

<u>**COUNT II**</u>
**BREACH OF CONTRACT**

96.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-2, 4, 6-22, 24-27, 47-56, 61-63, 65-66, 69-73 (d and e), 74-75, 77-78 above, as if the same were fully alleged herein and further alleges:

97.     Plaintiff brings this count on an individual basis and on behalf of the Takings Class.

98.     Plaintiff is an insured under the Policy.  Plaintiff satisfied all conditions precedent to this action.

99.     The Policy at issue was an insurance contract and was maintained in full force and effect at all times material hereto.

100.    Based on the foregoing, Defendant breached the Policy by not paying Plaintiff and Takings Class members the agreed or appraised salvage value in consideration for taking title to Plaintiff's and each Takings Class member's vehicle.

101.    As a direct and proximate result of Defendant's breaches of the Policy, Plaintiff and Takings Class members suffered damages.

102.    As a result of the Defendant's actions, Plaintiff was required to obtain the undersigned counsel and has agreed to pay them a reasonable fee.

103.    Plaintiff is also entitled to reasonable attorney's fees and costs pursuant to Section 627.428, Florida Statutes.

WHEREFORE, Plaintiff, individually prays for an order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rule of Civil 23(b)(3) or Rule 23(c)(4);

b. Designating Plaintiff as representative of the Takings Class and his counsel as their counsel;

c. Entering judgment for Plaintiff and the Takings Class for monetary relief, including damages and interest allowed by law;

d. Awarding attorney fees and costs under Section 627.428, Florida Statutes, for prosecuting this action; and

e.  Awarding Plaintiff and Takings Class members any other relief the Court deems

proper.

## JURY TRIAL DEMAND

Plaintiff requests trial by jury on all issues triable before a jury.

Dated:  September 26, 2018                    Respectfully Submitted,


By: *s/Edward H. Zebersky*
    Edward H. Zebersky, Esq. (FBN: 0908370)
    Mark S. Fistos, Esq. (FBN: 909191)
    ZEBERSKY PAYNE, LLP
    110 S.E. 6th Street, Suite 2150
    Ft. Lauderdale, FL  33301
    Tel.:  (954) 989-6333
    Fax:  (954) 989-7781
    Emails:  ezebersky@zpllp.com;
    mfistos@zpllp.com; ndiaz@zpllp.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2018, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will automatically send notification to all

attorneys of record.

/s/ *Edward H. Zebersky*
Edward H. Zebersky (FBN: 0908370)