# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

MICHAEL A. LOPEZ, on behalf of
himself and all others similarly situated,

Plaintiff,

v.                                                    CASE NO.: 0:18-cv-61844-WPD

PROGRESSIVE SELECT
INSURANCE CO.,

Defendant.
_____/

## DEFENDANT PROGRESSIVE SELECT INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Marcy Levine Aldrich (FBN 0968447)          Jeffrey S. Cashdan (*pro hac vice* granted)
Bryan T. West (FBN 83526)                   Zachary A. McEntyre (*pro hac vice* granted)
**AKERMAN LLP**                             J. Matthew Brigman (*pro hac vice* granted)
Three Brickell City Centre                  **KING & SPALDING LLP**
98 Southeast Seventh Street                 1180 Peachtree Street N.E.
Miami, Florida  33131                       Atlanta, Georgia 30309

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

RELEVANT BACKGROUND ................................................................................................... 3

    I.     Lopez's Accident and Ensuing Insurance Claim. ........................................................ 3

    II.   Lopez's Insurance Policy and Progressive Select's Salvage Handling Practices. .............. 4

    III.    Lopez's Claims ................................................................................................... 5

ARGUMENT AND CITATION OF AUTHORITY ................................................................... 6

    I.    LOPEZ HAS NOT SATISFIED THE PREDOMINANCE OR SUPERIORITY
REQUIREMENTS OF RULE 23(b)(3). ............................................................................ 7

        A.    Lopez's Claim Is Highly Individualized, and Liability Cannot Be Adjudicated on a
Classwide Basis. ...................................................................................................... 7

        B.    Damages Present a Predominant Individual Question. ................................................. 9

        C.    Lopez Failed to Demonstrate Superiority Through a Manageable Trial Plan or
Otherwise. ............................................................................................................... 12

    II.   LOPEZ CANNOT SATISFY ALL FOUR REQUIREMENTS OF RULE 23(a). ........... 13

        A.    There Is No Commonality Because the Purported Common Question Is Illusory. ....... 13

        B.    Lopez's Claims Are Based on Idiosyncratic Facts, Are Subject to Individualized
Defenses, and Therefore Are Not Typical. ................................................................ 14

        C.    Lopez Is an Inadequate Class Representative. ............................................................ 15

CONCLUSION ......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*527 Orton LLC v. Cont'l Cas. Co.*,
  2014 WL 11696697 (S.D. Fla. Sept. 22, 2014) ..................................................................13

*A Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*,
  2015 WL 11051056 (S.D. Fla. Aug. 26, 2015)....................................................................15

*Andrews v. Am. Tel. & Tel. Co.*,
  95 F.3d 1014 (11th Cir. 1996) .............................................................................................13

*Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*,
  238 F.R.D. 679 (S.D. Fla. 2006)..........................................................................................14

*Brinker v. Chicago Title Ins. Co.*,
  2012 WL 1081211 (M.D. Fla. Feb. 9, 2012) .......................................................................10

*Brown v. Electrolux Home Prod., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) .........................................................................................6, 9

*Butterworth v. Quick & Reilly, Inc.*,
  171 F.R.D. 319 (M.D. Fla. 1997).........................................................................................15

*by Douglas Asphalt Co. v. QORE, Inc.*,
  657 F.3d 1146 (11th Cir. 2011) ...........................................................................................13

*City of St. Petersburg v. Total Containment, Inc.*,
  265 F.R.D. 630 (S.D. Fla. 2010)............................................................................................8

*Cohen v. State Farm Ins. Co.*,
  2007 WL 4437223 (M.D. Pa. Dec. 14, 2007).....................................................................14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)..................................................................................................................6

*Cornette v. I.C. Sys., Inc.*,
  280 F. Supp. 3d 1362 (S.D. Fla. 2017) ................................................................................11

*Cotromano v. United Techs. Corp.*,
  2018 WL 2047468 (S.D. Fla. May 2, 2018) ........................................................................10

*Dalton v. FMA Enterprises, Inc.*,
  1996 WL 379105 (M.D. Fla. July 1, 1996) .........................................................................16

*Hummel v. Tamko Bldg. Prod., Inc.*,
   303 F. Supp. 3d 1288 (M.D. Fla. 2017) ...........................................................................8, 9

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*,
   642 F. Supp. 2d 1318 (M.D. Fla. 2009) ............................................................................12

*Kelecseny v. Chevron, U.S.A., Inc.*,
   262 F.R.D. 660 (S.D. Fla. 2009) .......................................................................................12

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ..........................................................................................15

*Kirts v. Green Bullion Fin. Servs., LLC*,
   2010 WL 3184382 (S.D. Fla. Aug. 3, 2010) .....................................................................14

*Montgomery v. New Piper Aircraft, Inc.*,
   209 F.R.D. 221 (S.D. Fla. 2002) .........................................................................................8

*Nat'l Ass'n of Prof'l Allstate Agents v. Allstate Ins. Co.*,
   2002 WL 34940469 (M.D. Fla. Apr. 22, 2002) ..................................................................6

*Negron v. CitiMortgage Inc.*,
   2016 WL 10953267 (S.D. Fla. Oct. 19, 2016) ....................................................................6

*Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
   589 F. Supp. 2d 1336 (S.D. Fla. 2008) ...............................................................................6

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*,
   2016 WL 7666179 (M.D. Fla. May 12, 2016) .............................................................10, 11

*Perisic v. Ashley Furniture Indus., Inc.*,
   2018 WL 3391359 (M.D. Fla. June 27, 2018) .....................................................................9

*Petersen v. Am. Gen. Life Ins. Co.*,
   2016 WL 7365187 (M.D. Fla. Mar. 30, 2016) ..................................................................12

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) .................................................................................7, 9, 11

*Sikes v. Teleline, Inc.*,
   281 F.3d 1350 (11th Cir. 2002), *abrogated on other grounds by Bridge v.*
   *Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) .............................................................9

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ................................................................................6, 7, 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................................7, 13, 14

iii

*Wallace v. NCL (Bahamas), Ltd.*,
    271 F.R.D. 688 (S.D. Fla. 2010) ............................................................................................12

*Zelaya v. United States*,
    781 F.3d 1315 (11th Cir. 2015) ...............................................................................................6

**Statutes**

Fla. Stat. § 319.30(3)(b) .................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

## **INTRODUCTION**

Plaintiff Michael Lopez was involved in an automobile collision that rendered his 2007 Nissan Murano (the "Murano") a total loss. By Lopez's own admission, his insurer, Progressive Select Insurance Company ("Progressive Select"), paid him for his totaled Murano, and Lopez was satisfied with the amount he was paid. But years later, Lopez decided it was not enough for Progressive Select to pay him the pre-loss value of the totaled vehicle. Instead, Lopez decided that Progressive Select also should have paid him the amount that Progressive Select recovered for the vehicle after selling it as salvage.

Nothing in Lopez's insurance policy or Florida law entitles him to the windfall he seeks: a plaintiff has no claim for breach of contract in Florida when he does not even allege the defendant breached the contract. On that basis alone, Lopez's claim fails as a matter of law. But Lopez nevertheless contends that by not paying him twice for his total loss vehicle—both the *pre*-loss value and the *post*-loss value—Progressive Select now owes him, and a purported class of other Florida insureds, the amount that Progressive Select recovered for their salvage vehicles at auction.

This Court need not decide whether Lopez has met his heavy burden of proving that this case can be tried as a class action, consistent with the dictates of Rule 23 and due process, because the Court should defer ruling on Lopez's Motion and summarily grant the summary judgment motion Progressive Select will file shortly. But if the Court does reach the class certification question, it should look beyond Lopez's characterization of the case as a straightforward contract dispute to Lopez's real theory and the evidence he intends to use to prove his claim. That evidence is facially individualized, and it demonstrates that while Lopez styles his claim as one for breach of contract, his real theory has nothing to do with whether Progressive Select breached a term of the written insurance policy—because, as Lopez acknowledges, there is no contract term that Progressive Select could have breached.

In reality, Lopez's claim is based entirely on alleged misrepresentations (or, in his case, alleged omissions) that Progressive Select purportedly made to him and other insureds. His Motion for Class Certification (Dkt. 72, the "Motion") makes that clear: the alleged wrongdoing is predicated not on any uniform contract term—which Lopez concedes does not exist—but on Lopez's individual interactions with Progressive Select, which Lopez explains in detail. Viewed for what it really is, everything about Lopez's claim is individualized—what was said, by whom,

to whom, and whether any alleged representations caused any customer to incur actionable damages. Lopez simply glosses over these individualized issues, falling back on the conclusory refrain that this case is about contract interpretation, while relying exclusively on individualized facts to support his otherwise unsupportable theory.

That is more than enough for the Court to deny class certification. But it is not the only reason the Court should deny Lopez's Motion. Lopez has also failed to meet his burden of showing that damages can be calculated on a classwide basis. Lopez contends that Progressive Select should simply pay over any money it received from the disposal of class members' salvage vehicles to the putative class members. But nothing in the Policy could conceivably require such a payment. Under the Policy, if Progressive Select retained title to a salvage vehicle then Progressive Select owed Lopez—and the absent class members—the pre-loss values of their vehicles. If Lopez or the putative class members are entitled to any damages—and they are not—the relevant measure is not how much Progressive Select was paid for the purported class members' total loss vehicles sold as salvage; it is how much money the purported class members would have recovered for their salvage vehicles if they had retained the vehicles and sold them themselves. There is absolutely no evidence of that in the record, nor is there any evidence that Lopez could prove those amounts at trial using aggregate evidence.

Finally, all else aside, Lopez is a seriously flawed named plaintiff whose claims are atypical and who is, himself, an inadequate class representative. Lopez had never seen the insurance policy that he alleges Progressive Select breached. He has no understanding of the claims he asserted against Progressive Select; he could not even estimate how much (or be sure if) he had been damaged by Progressive Select; and he filed suit on the sole basis that he "felt" that he should be paid some additional sum of money for his salvage vehicle. In the face of such a complete abdication of his responsibilities, Lopez cannot serve as a class representative.

The Court should deny Lopez's Motion.

## RELEVANT BACKGROUND

**I.    LOPEZ'S ACCIDENT AND ENSUING INSURANCE CLAIM.**

On or about April 27, 2017, Lopez was involved in a motor vehicle accident while driving the Murano.[1] Claim Notes [Dkt. 72-4] at 1. Lopez does not recall any details of the accident, but he remembers that he was driving and that, the next thing he knew, he had been in an accident. Lopez Dep. (filed as Ex. A, hereto) at 22:22-24:10. The Murano had gone off the road, run into a pole, and come to rest on concrete pillars in front of a nearby building. *Id.* The local police department responded to the incident and had the Murano towed to a local storage yard. *Id.* at 33:24-34:14.

After the police towed the vehicle away, Lopez called Progressive Select to report the accident. *Id.* at 33:14-34:21. Lopez does not recall anything significant about that conversation or any follow-up conversations with Progressive Select, except that he asked Progressive Select to pay for his broken reading glasses and some other personal articles, and Progressive Select informed him those items were not covered. *Id.* at 33:14-38:8. Lopez never asked Progressive Select if he could keep the totaled Murano, what Progressive Select would do with the totaled vehicle, or whether Progressive Select would remit to him the money it recovered for the Murano once it was sold as salvage. *Id.* at 40:20-22. In short, Lopez asked nothing—and was told nothing— about the salvage vehicle.

Progressive Select covered the claim, deemed the Murano to be a total loss, and paid Lopez the actual cash value ("ACV") of the Murano to settle Lopez's claim. *Id.* at 42:24-43 19 & Ex. 2; *see also* Claims Notes [Dkt. 72-4] at 6. Lopez admits that the ACV Progressive Select paid for the Murano was fair, and he does not contend he should have been paid more. *Id.* at 45:24-46:7. On the day Lopez went by Progressive Select's office to pick up his ACV check, Lopez also signed certain title paperwork that transferred the title to the salvaged Murano to Progressive Select. Lopez Dep. at 47:2-49:22 & Ex. 3. Lopez did not ask any questions about the salvage paperwork or his salvage vehicle at this time, although admittedly he could have. *Id.* at 48:20-24. To the contrary, all Lopez told the Progressive Select representatives he was interacting with was that he wanted "to wrap things up" since he needed a car "to get to work." *Id.* at 36:17-18. At the time

---

[1] Plaintiff twice alleged that the motor vehicle accident occurred on January 20, 2017, but learned "in discovery" that his accident actually occurred four months later. *See* Am. Compl. ¶ 53; Pl.'s Mot. at 4 n.4.

Lopez's total loss claim was resolved, he had no issues with the amount of money Progressive Select paid him to settle his claim. *Id.* at 43:16-19.

It was not until around a year a half later that Lopez decided to file this lawsuit, and his decision had nothing to do with the language of the Policy or any rights Lopez thought he had under it. Instead, after seeing a number of "shops buying damaged vehicles" and knowing those shops "take [the salvage vehicle] and sell it for parts, [] they rebuild it, [or] they repair it," Lopez asked some friends whether people are compensated for their salvaged vehicles after an accident. *Id.* at 28:3-29:3. None of Lopez's friends had ever received such a payment following a total loss. *Id.* Nevertheless, after Lopez posed a "hypothetical question" to his now-lawyer in this case—with whom he was also friends—as to whether he had a claim for the salvage value of his car, he decided to file suit. *Id.* at 29:25-31:14. This lawsuit ensued.

## II. LOPEZ'S INSURANCE POLICY AND PROGRESSIVE SELECT'S SALVAGE HANDLING PRACTICES.

Lopez's insurance policy with Progressive Select (the "Policy," Dkt. 72-1) states that Progressive Select will "pay for sudden, direct, and accidental *loss* to a covered auto" and that it will "pay for the *loss* in money." Policy at 33 (emphasis added). The Policy also states that the *limit* of Progressive Select's liability is the lower of several values, including the ACV. Policy at 32. In most cases, Progressive Select pays the pre-loss ACV of the vehicle (minus any deductible) and takes title to the salvage vehicle. Peters Dep. (filed at Dkt. 72-2) at 65:9-67:19; 70:12-18; 106:12-107:10 & Ex. 11. In those situations, the insureds recover the amount of the "loss"—i.e., the pre-loss value—and in exchange, the insureds give up any rights to the post-loss value of the car, sparing themselves the burden of disposing of their totaled vehicles. *Id.* at 73:22-74:4.

But Progressive Select does not require insureds to give up their totaled vehicles. An insured who wishes to retain a vehicle may do so. *Id.* at 107:5-8. In that situation, Progressive Select determines the amount of the insured's "loss" by deducting the projected value of the salvage vehicle from the pre-loss ACV and pays the resulting amount to settle the claim. *Id.* Progressive Select then rebrands the title, as required by Florida law, and returns the rebranded title to the insured. *Id.* at 73:8-16.[2]

---

[2] *See also* Fla. Stat. § 319.30(3)(b):

> [A]n insurance company that pays money as compensation for the total loss of a
> motor vehicle or mobile home shall obtain the certificate of title for the motor

Progressive Select adjusters do not use a script when they discuss salvage vehicle options with insureds. Each adjuster communicates with insureds individually depending on the circumstances of the claim. Peters Dep. at 73:5-74:23.

## III.   LOPEZ'S CLAIMS

Lopez's sole remaining claim is predicated on the contention that because "*no [Policy] provision allows* [Progressive Select] to take Lopez's and Class and Subclass Members' total loss vehicles without paying them their salvage values," Progressive Select violated the Policy by taking title to the salvaged Murano in exchange for paying Lopez its pre-loss ACV. Pl.'s Mot. at 5 (emphasis added); *see also* Pls.' Rog. Resp. No. 2 (asking Lopez to identify the policy provision Progressive Select breached, answering that Lopez "was required to provide my damaged vehicle to Progressive" which "was not required under my [Policy,] Part IV—Damage to a Vehicle"), 6 (same response to a request to identify the basis for Lopez's contention that Progressive Select was required to pay some additional sum for the salvage value of the Murano). Of course, embedded in that claim is the tacit acknowledgment that Progressive Select did not breach any provision of the Policy.

This was not always Lopez's theory. At the outset, Lopez alleged that: (1) Progressive Select *required* its insureds to transfer salvage title to their vehicles following a total loss, Am. Compl. ¶ 48; and (2) doing so violated Progressive Select's obligation under the Policy to pay the "agreed or appraised" value if it retained certain covered property, *id.* ¶ 50. In discovery, however, Lopez learned that Progressive Select did not "require" insureds to transfer the salvage title of their total loss vehicles to Progressive Select. Peters Dep. at 73:11-13. And in any event, Lopez now recognizes that, at best for him, Progressive Select's salvage process is not addressed by the Policy one way or the other. Pl.'s Mot. at 5; Pls.' Rog. Resp. Nos. 2 & 6.[3]

However formulated then, one thing is clear about the position Lopez has taken: there is no dispute—much less a classwide dispute—as to how any particular Policy provision should be

---

vehicle or mobile home, make the required notification to the National Motor Vehicle Title Information System, and, within 72 hours after receiving such certificate of title, forward such title . . . to the department for processing. The owner or insurance company, as applicable, may not dispose of a vehicle or mobile home that is a total loss before it obtains a salvage certificate of title or certificate of destruction from the department.

[3] Progressive Select disputes that the Policy is truly "silent" as to salvage vehicles, but since the parties are in agreement that it does not expressly prevent Progressive Select from taking title to

interpreted. Lopez has not identified any Policy provisions that Progressive Select is alleged to have breached, and Progressive Select will shortly move for summary judgment on that basis. *See Nat'l Ass'n of Prof'l Allstate Agents v. Allstate Ins. Co*., 2002 WL 34940469, at *6 (M.D. Fla. Apr. 22, 2002) (breach of contract claim cannot be based on conduct that is not prohibited by the contract in question); *see also Negron v. CitiMortgage Inc*., 2016 WL 10953267, at *6 (S.D. Fla. Oct. 19, 2016) (dismissing breach of contract claim on the grounds that "alleging that the mortgage contract did not allow a particular action is not the same as alleging that the mortgage contract outright prohibited such action").

Should the Court address Lopez's class certification motion at all (which it need not do in light of the claim's clear substantive inviability), the Court should see the claim for what it is: a claim that particular Progressive Select employees allegedly failed to inform particular insureds that they were not required to transfer their salvage vehicles, thus allegedly inducing them to do so, without paying the insureds the salvage value of their vehicles *in addition to the ACV. See Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008) (dismissing plaintiff's purported breach of implied contractual warranty claim against insurer because the facts underlying the claim showed it was a disguised bad-faith claim); *see also Zelaya v. United States*, 781 F.3d 1315, 1334 (11th Cir. 2015) (finding that "the substance of the claim" and not the label controls).

## ARGUMENT AND CITATION OF AUTHORITY

Class actions are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). "The burden of proof to establish the proprietary of class certification" rests with Lopez, who must demonstrate each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citation omitted). "And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'" *Brown v. Electrolux Home Prod., Inc*., 817 F.3d 1225, 1233 (11th Cir. 2016) (quoting *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997)).

---

salvage vehicles, the Court need not decide this issue for purposes of class certification. Progressive Select will fully address the import of the relevant Policy language in its forthcoming motion for summary judgment.

6

This Court, in turn, "must conduct a rigorous analysis of the Rule 23 prerequisites" to determine that each have been satisfied. *Vega*, 564 F.3d at 1266. This rigorous analysis frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim," as "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the United States Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Id.*. This means that a party must "not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but must also "satisfy *through evidentiary proof* at least one of the provisions of Rule 23(b)." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014) (citation omitted).

Because the Court's "rigorous analysis" will show Lopez has fallen far short of satisfying his burden on class certification, the Court should deny the Motion.

## I.   LOPEZ HAS NOT SATISFIED THE PREDOMINANCE OR SUPERIORITY REQUIREMENTS OF RULE 23(b)(3).

### A.   Lopez's Claim Is Highly Individualized, and Liability Cannot Be Adjudicated on a Classwide Basis.

Cutting through Lopez's conclusory assertions that this case is about contract interpretation, the individualized nature of Lopez's claim in this case is apparent. Lopez's own motion does not cite a single Policy provision, but instead relies on an array of his individualized interactions with Progressive Select:

- "Progressive [Select] would not give him his settlement check until Plaintiff signed over his title to Progressive."

- "[N]ever during the adjusting of Plaintiff's total loss claim did Defendant offer to pay or pay Plaintiff his vehicle's salvage value—nor did it ever tell Plaintiff he had the right to retain the damaged vehicle—either with or without a reduction from his ACV payment for the salvage value."

- "Defendant did not advise Plaintiff" that he had the option to "keep the total loss vehicle."

- "Defendant has no procedures or policies in place to advise insureds of their options to keep the totaled vehicle and no template for use[] by claims personnel or adjusters to address salvage issues with insureds."

7

*See* Pl.'s Mot. at 4-6

Lopez's reliance on his personal interactions with Progressive Select make this case inappropriate for class treatment. *See City of St. Petersburg v. Total Containment, Inc*., 265 F.R.D. 630, 639 (S.D. Fla. 2010) (individualized questions of representations and reliance prevent certification of a class); *Hummel v. Tamko Bldg. Prod., Inc.*, 303 F. Supp. 3d 1288, 1300 (M.D. Fla. 2017) (finding no predominance where "nature of the case will require the Court to conduct an inquiry into what, if any, misrepresentations were made to each individual class member"). This is particularly so where the alleged inducement is based on oral representations. *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) (finding individualized factual inquiries in oral representations preclude class certification). The unrefuted evidence demonstrates that Progressive Select's interactions with its insureds over the course of their claims vary significantly from case to case. As Progressive Select's 30(b)(6) witness testified, there are "approximately 1,500 adjusters in the State of Florida" and each one has "the autonomy to have independent conversations with the customers." Peters Dep. at 74:8-16. These variations in customer interactions are especially common in discussions about salvage vehicles. Certain adjusters may present certain insureds with the option of retaining their salvaged vehicles in exchange for a reduction in their ACV payment, while other adjusters addressing different claims may not. *Id.* at 88:5-18 (there "are certain reps who as part of their 'script' when they have a total loss, they will bring that conversation [about retaining salvage] up" but Progressive Select "do[es] not make it mandatory that ever claims rep has that conversation").

In addition to his own personal discussions with a Progressive adjuster, Lopez relies on the Progressive "frequently asked questions" webpages to support his position that "Plaintiff's experience" with respect to his salvage vehicle is "not unique." Pl.'s Mot. at 5, n.4 *with* Lopez Dep. at 66:4-67:8. The webpages only state the obvious: generally speaking, Progressive Select will take a customer's vehicle—as a convenience—and dispose of it. Lopez Dep. at Exs. 6 & 7. But regardless of what the webpages say, Lopez himself testified that he *had never even seen the webpages on which his own class certification motion relies*. Lopez Dep. at 66:4-67:8. In fact, Lopez had never even visited Progressive's website other than to pay his premiums. Lopez Dep. at 66:9-67:8. This included when Lopez was first shopping for insurance and individually called a number of different insurance providers, ultimately choosing Progressive Select because it offered the lowest rate. *Id.* at 16:15-17:7 (Lopez shopped for insurance by "[c]alling up several insurance

companies" and "giving [his] information over the phone to get a quote;" he selected Progressive because "[t]hey came back with the best quote"). The fact that Lopez himself had not seen, much less relied, on the webpages he now cites illustrates the individualized nature of the proof he would present in an attempt to prove his claim. *See Hummel*, 303 F. Supp. 3d at 1300 (finding no predominance because the "Court must determine whether individual members reviewed specific product literature, or whether individual members reviewed the website"); *Perisic v. Ashley Furniture Indus., Inc*., 2018 WL 3391359, at *6 (M.D. Fla. June 27, 2018), *report and recommendation adopted*, 2018 WL 4381184 (M.D. Fla. Aug. 13, 2018) (finding no predominance, in part, because putative class representative and potential class members had "unique sales experience and exposure to varying allegations" regarding defendant's product, including defendant's website).

Simply put, Lopez's claim is based on his own, personal interactions with Progressive Select. Because those interactions would necessarily vary from claim to claim and insured to insured, classwide adjudication would be impossible and class certification would be improper.

### B. Damages Present a Predominant Individual Question.

No matter how Lopez couches his claim, classwide adjudication of that claim "will involve extensive individualized inquiries on the issues of injury and damages—so much so that a class action is not sustainable." *Sikes v. Teleline, Inc*., 281 F.3d 1350, 1366 (11th Cir. 2002), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008). In particular, "individual damages defeat predominance [because] computing them 'will be so complex, fact-specific, and difficult that the burden on the courts system would be simply intolerable.'" *See Brown* , 817 F.3d at 1239  (quoting *Klay v. Humana, Inc*., 382 F.3d 1241, 1260 (11th Cir. 2004)).

Lopez argues that Progressive Select must pay each class member the net recovery (i.e., the gross amount for which the salvage vehicle was sold minus an $85 fee Progressive Select pays its salvage vendor, Pl.'s Mot. at 7) that Progressive Select obtained in disposing of each salvage vehicle to which it took title. *See* Pl.'s Mot. at 20 (asserting that damages may be based on the "post-salvage-sale gross and net salvage values"). This damages measure, however, is entirely untethered from any possible theory of recovery, and it cannot overcome the predominant individualized damages issues implicated by Lopez's actual claims. *Randolph* , 303 F.R.D. at 696–98 (denying certification because plaintiff's theory of damages did not match her theory of liability) (quoting and citing *Comcast*, 569 U.S. at 35)); *see Brown*, 816 F.3d at 1239 (noting that

a model for classwide damages must match plaintiff's theory of liability); *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, 2016 WL 7666179, at *28 (M.D. Fla. May 12, 2016) (finding that because plaintiffs' damages model did match their theory of liability because it did not account for "any price premium received by the alleged misrepresentations and omissions").

To begin with, Lopez's motion fails to even mention the contractual measure of damages that Lopez purported to seek in the Amended Complaint: the "agreed or appraised" value of the salvaged Murano. *Compare* Pl.'s Mot. (failing to mention "agreed or appraised value" as damages), *with* Am. Compl. ¶¶ 61, 100 (asserting entitlement to the "agreed or appraised value" of the salvaged Murano). Of course, this measure of damages cannot be calculated on a classwide basis. Determining what each individual class member and Progressive Select would have "agreed to" is an exercise in futility, and the process of individually appraising more than 50,000 salvage vehicles, the vast majority of which are no longer in the possession of Progressive Select or the class members, would overwhelm the entire case. *See Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *19–20 (S.D. Fla. May 2, 2018) (denying class certification and finding that expert's proposed "mass appraisal methods [were] riddled with individual inquiries" that would defeat the predominance because they would require "plaintiff-by-plaintiff scrutiny"); *Brinker v. Chicago Title Ins. Co.*, 2012 WL 1081211, at *14 (M.D. Fla. Feb. 9, 2012), *report and recommendation adopted*, 2012 WL 1081182 (M.D. Fla. Mar. 30, 2012) (finding no predominance where "[t]he trial could potentially turn in to a number of mini-trials to resolve the appraisal issues alone"). At an absolute minimum, Lopez has not even attempted to present evidence establishing that this gargantuan undertaking can be accomplished, to say nothing of how it could be accomplished.[4]

Realizing the impossibility of certifying a class seeking the "agreed or appraised" value of their vehicles—the theory Lopez posited in the Amended Complaint, only to abandon it unceremoniously when the evidence fell short—Lopez instead seeks to re-write the Policy altogether. Now, Lopez argues that Progressive Select must pay the money Progressive Select recovered for salvaged vehicles at after-the-fact salvage auctions, *in addition to* the money Progressive Select has already paid, representing the pre-loss values of the vehicles. *See* Pl.'s Mot. at 6–7, 20. Nothing in the Policy, however, even arguably requires such a payment. *See generally*,

---

[4] Notably, when Progressive Select asked Lopez to undertake an appraisal of his Murano, Lopez refused. *See* Dkt. 30 (response in opposition to motion to compel appraisal).

Policy. Nor is such a damages formula tied to Lopez's own, strained claim for "breach of contract." Even if Progressive Select "breached" the policy by taking title to salvage vehicles when then the Policy was silent as to Progressive Select's authority to do so—and it did not—then the measure of Lopez's and the putative class members' damages would be the amount necessary to place them in the same position they would have occupied but-for the breach. *Cornette v. I.C. Sys., Inc*., 280 F. Supp. 3d 1362, 1375 (S.D. Fla. 2017) ("The underlying purpose of damages in actions premised on a breach of contract is to place the non-breaching party in the same position it would have occupied if the contract had not been breached." (internal marks and citation omitted)). Lopez's failure to present an approach to classwide damages that is consistent with the damages actually available under the law is fatal to class certification. *Randolph*, 303 F.R.D. at 696–98;  *PB Prop. Mgmt., Inc*, 2016 WL 7666179, at *28.

Lopez assumes that every individual in the class would have sold his vehicle at auction, through Progressive Select's auction vendor, on the same terms as Progressive Select, and for the same price that Progressive Select recovered—but he presents no evidence of any kind to support this assumption, which is plainly tenuous at best. Even Lopez testified that he has never sold or restored a salvage vehicle. *See* Lopez Dep. at 33:2-6. The only means of determining what each individual class member *would have* done with his salvage vehicle would be to ask him, which is the exact kind of individualized inquiry that defeats class certification.[5]

Finally, Lopez's own testimony regarding damages is instructive. Lopez testified:

Q. How would you go about calculating the money that Progressive owes you?
A. I couldn't calculate it.
[…]
Q. How would you go about determining how much money each class member would receive?
A. I wouldn't even know where to begin.

*See* Lopez Dep. at 74:24-75:12. Lopez's abject failure to put forward any means by which to determine his own damages, much less classwide damages, bars class certification.

---

[5] Determining the amount of "loss" suffered by each class member is even more individualized. As discussed above, when an insured retains their salvage vehicle, Progressive Select determines the amount of "loss" by deducting the projected salvage amount (i.e., the post-loss value of the vehicle) from its actual cash value (i.e., the pre-loss value of the vehicle). Progressive Select would have done the same in the event Lopez or any other class member retained salvage. To have any damages then, each class member would need to show that he could have recovered more than Progressive Select's projected salvage amount—that cannot be done a classwide basis.

### C. Lopez Failed to Demonstrate Superiority Through a Manageable Trial Plan or Otherwise.

Lopez has not carried his burden and demonstrated that a class action is superior to individual litigation, which is the traditional and presumptively preferable vehicle for resolving disputes. "A plaintiff seeking class certification bears the burden of establishing each element of Rule 23, which includes superiority in Rule 23(b)(3) cases, and courts must consider how a case will be tried as part of the superiority assessment." *Vega*, 564 F.3d at 1279 n.20; *see Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 677 (S.D. Fla. 2009) (denying class certification, in part, because plaintiff's trial plan calling for two phases—liability and damages—did "not promote judicial efficiency nor [was] it superior to other methods of adjudicating potential claims against Defendants"); *Wallace v. NCL (Bahamas), Ltd.*, 271 F.R.D. 688, 692 (S.D. Fla. 2010) (denying class certification where plaintiffs' "short, three-page" trial plan did not resolve superiority concerns); *see also James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 642 F. Supp. 2d 1318, 1328 n.8 (M.D. Fla. 2009) ("The Court would expect plaintiff to submit a trial plan with its motion to certify a class. The Eleventh Circuit recently outlined the benefits to such an approach."); *Petersen v. Am. Gen. Life Ins. Co.*, 2016 WL 7365187, at *13 (M.D. Fla. Mar. 30, 2016) (denying class certification, in part, because plaintiff's court-ordered trial plan did not include the appropriate level of detailed analysis for the court to determine whether the class definition satisfied Rule 23).

When asked in discovery to present a trial plan, Lopez responded that "I rely on my lawyers to make the determinations at the appropriate time." Ex. B, Pl.'s Resp. Rog. No. 13. The "appropriate time" is now, and neither Lopez nor his lawyers have presented (or could present) any such plan. Myriad individualized issues must be resolved in this case to get to a judgment, including the representations Progressive Select personnel made to each class member, whether the class members relied on those representations, and what relief it would take to place those class members who could demonstrate liability (if there are any) in the same position they would have occupied before the alleged breach. Lopez has not presented any plan to address these issues, much less a plan that is manageable. As a result, Lopez has not met his burden to show that a class action is the superior means of resolving class members' claims against Progressive Select.

II.     **LOPEZ CANNOT SATISFY ALL FOUR REQUIREMENTS OF RULE 23(a).**

     **A. There Is No Commonality Because the Purported Common Question Is Illusory.**

     Lopez has not demonstrated commonality because determining liability for conduct in the absence of a contractual provision requires individualized proof. *See Vega*, 564 F.3d at 1274 (noting that plaintiffs "would proffer individualized and varying evidence to defend against claims of individual class members by showing what they knew or should have known" about alleged common issue). To satisfy the commonality requirement in Rule 23(a), Lopez must identify a uniform policy provision and uniform practice that Progressive Select has followed, to the detriment of its insureds. *Dukes*, 564 U.S. at 357 ("The plaintiff must begin by identifying the specific [] practice that is challenged.") (citation omitted). Lopez fails to do so. As noted above, Lopez did not identify a single policy provision in his entire 20-page brief. *See generally* Pl.'s Mot. Lopez instead frames the issue as a disagreement with Progressive Select about whether a policy provision expressly permits Progressive Select to take title to salvage vehicles without payment of *both* the actual cash value *and* some form of "salvage value." *See* Pl.'s Mot. at 13. But Lopez entirely omits the flip side of that coin: the contract does not prohibit Progressive Select from taking salvage vehicles, nor does it require Progressive Select to pay insureds the salvage value of their vehicles in addition to the amount of the "loss." Without identifying and relying on a common policy provision, Lopez's allegedly common issue "breaks down into an unmanageable variety of individual legal and factual issues." *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996), *abrogation on other grounds recognized by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1151 (11th Cir. 2011).[6]

     Stripped of any common issues of contractual interpretation, Lopez also cannot show a uniform pattern and practice regarding Progressive Select's interaction with its insureds on the question of whether they may keep title to their salvage vehicles or choose to turn title over to

---

[6] Lopez also misconstrues the law regarding the construction of ambiguous policy provisions against the insurer. *See* Pl.'s Mot. at 13 (citing *527 Orton LLC v. Cont'l Cas. Co.*, 2014 WL 11696697, at *3 (S.D. Fla. Sept. 22, 2014). The case Lopez cites states that "Policy language should be given its plain meaning, however where the language is ambiguous *(i.e., it could reasonably be interpreted either to compel coverage or to deny coverage)* the language should be construed against the insurer." *527 Orton LLC v. Cont'l Cas. Co.*, 2014 WL 11696697, at *3 (S.D. Fla. Sept. 22, 2014) (emphasis added for omitted language). This case is not a coverage dispute, so this rule of construction does not apply—and even if it did, there is nothing "ambiguous" about the Policy language stating that Progressive Select would pay for Lopez's "loss."

Progressive Select. Again, contrary to Lopez's prior allegations, Am. Compl. ¶ 48, Progressive Select does not require insureds to turn over their salvage vehicles. Peters Dep. at 107:5-8.  Indeed, Lopez himself contends that Progressive Select "has no procedures or polices in place to advise insureds of their options to keep the totaled vehicle and no template for used [*sic*] by claim personnel or adjusters to address salvage issues with insureds." Pl.'s Mot. at 6. These are the exact type of class-member-to-class-member dissimilarities that prevent class certification. *Dukes*, 564 U.S. at 359.

Finally, Lopez's own story demonstrates how varied Progressive Select's course of conduct with respect to salvage vehicles can be. Lopez apparently wanted to keep the salvaged Murano, but he did not tell anyone that. If he had, Progressive Select would have let him keep it. As it were, however, Progressive Select paid Lopez the full ACV for his Murano, took title to the vehicle, and spared Lopez the inconvenience of disposing of it. Lopez was happy with this payment, and did not even think to raise an issue about it a hypothetical conversation with a group of friends a year-and-a-half later. It was at that point that Lopez filed suit against Progressive Select demanding payment for his salvaged Murano. Nothing about this experience is "common" to other class members, and nothing about this experience lends itself to classwide adjudication as contemplated by Rule 23(a).

### B. Lopez's Claims Are Based on Idiosyncratic Facts, Are Subject to Individualized Defenses, and Therefore Are Not Typical.

Lopez cannot satisfy the typicality requirement in Rule 23(a) because Lopez's claim is based on idiosyncratic facts and Lopez is subject to individual defenses. *See Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp*., 238 F.R.D. 679, 694 (S.D. Fla. 2006). Lopez testified that he had never even read his insurance policy, Lopez Dep. at 58:3-59:14, that he waited over a year and a half before filing suit, *id.* at 28:13-17, and that he continued on as a Progressive Select insured for years despite knowing that Progressive Select would not pay Lopez any money in excess of ACV for the "salvage value" of the Murano, *id.* at 51:19-52:2. Each of these facts, all of which are unhelpful to Lopez, will be central at any trial of this case and would prejudice the ability of absent class members to prevail. Lopez is therefore subject to individualized defenses and cannot meet his burden to show the kind of typicality required under Rule 23(a). *See Kirts v. Green Bullion Fin. Servs., LLC*, 2010 WL 3184382, at *9 (S.D. Fla. Aug. 3, 2010) (finding named plaintiffs atypical because they lacked factual support for their claims); *Cohen v. State Farm Ins. Co.,* 2007

WL 4437223, at *5 (M.D. Pa. Dec. 14, 2007) (finding plaintiff atypical because of the "unique facts and the unique defense of plaintiff's case").

### C.  Lopez Is an Inadequate Class Representative.

Lopez mistakenly suggests that the lack of intra-class conflicts and the presence of competent counsel are the only requirements for establishing adequacy. *See* Pl.'s Mot. at 14-16. Rule 23(a)(4) also does not allow a plaintiff to lend his name to a class action that is controlled by his lawyers. Potential class members are "entitled to 'more than blind reliance upon even competent counsel by uninterested and inexperienced representatives.'" *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (citation omitted). Thus, where a purported class representative's "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case," the plaintiff is not an adequate class representative. *Id.* at 728; *see also Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 323 (M.D. Fla. 1997) (finding putative class representative inadequate where her "unfamiliarity with the facts and essential elements of the case" prevented her from "adequately protect[ing] the interests of the class").

Here, even a cursory review of Lopez's deposition establishes that he is unfit to serve as a class representative in this case. *See A Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*, 2015 WL 11051056, at *4 (S.D. Fla. Aug. 26, 2015) (finding putative class representative inadequate where deposition showed abdication of responsibilities to class counsel). For example, Lopez testified as follows about the basis for his claims against Progressive Select:

> Q. Why do you think Progressive Select was required to pay you the money it recovered for your salvaged vehicle?
> A. I just feel that that should have been part of the value of the car.
> Q. Anything aside from your feelings that it should have been part of the value of the car?
> A. No.

Lopez Dep. at 32:7-17. When asked about his insurance policy on which Lopez's lawsuit is purportedly based, Lopez testified as follows:

> Q. What provision of the insurance policy do you [co]ntend [Progressive Select] breached?
> A. I do not know the document.  I have not read the document, so I couldn't answer the question.
> Q. Do you understand that you filed a lawsuit against Progressive alleging that they breached this insurance policy?
> A. Yes.

> Q. But sitting here today, you don't know what provision of the policy they've breached?
> A. No.
> Q. Do you know if anything in the policy speaks to salvaged vehicle[s]?
> A. *I haven't read it so I couldn't tell you.*

*Id.* at 60:7-24 (emphasis added). And as to the damages Lopez purportedly seeks from Progressive Select:

> Q. Are you seeking monetary compensation from Progressive in your lawsuit?
> A. I guess I am.
> [. . .]
> Q. How much money are you asking for?
> A. I have no expectations of receiving money, to be honest with you.

*Id.* at 73:16-74:3.

Lopez is not even sure if he has a fee agreement with his attorneys, *id.* at 81:4-19, and when pressed, Lopez conceded that he "wouldn't want to incur the cost of notifying the members of the class." *Id.* at 77:22-78:5. This also makes Lopez an inadequate class representative. *Dalton v. FMA Enterprises, Inc.*, 1996 WL 379105, at *6 (M.D. Fla. July 1, 1996) ("[I]t is [p]laintiff's ultimate responsibility to provide adequate financing, and [p]laintiff's reliance on counsel for this funding leaves great potential for conflicting interests.").

If class-representative requirements have any meaning at all, then those requirements bar Mr. Lopez's service as a class representative here.

## **CONCLUSION**

For these reasons, Progressive Select respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

Respectfully submitted this 23rd day of September 2019

*/s/ Marcy Levine Aldrich*
Marcy Levine Aldrich (FBN 0968447)
Bryan T. West (FBN 83526)
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida  33131
Telephone: 305-374-5600
Telefax: 305-374-5095
marcy.aldrich@akerman.com
bryan.west@akerman.com

Jeffrey S. Cashdan
(*pro hac vice* granted)
Zachary A. McEntyre
(*pro hac vice* granted)
J. Matthew Brigman
(*pro hac vice* granted)
**KING & SPALDING LLP**
1180 Peachtree Street N.E.
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
jcashdan@kslaw.com
zmcentyre@kslaw.com
jbarrett@kslaw.com
mbrigman@kslaw.com

Julia C. Barrett
(*pro hac vice* granted)
**KING & SPALDING LLP**
500 W. 2nd Street
Austin, Texas 78701
Tel: (512) 457-2000
Fax: (512) 457-2100
jbarrett@kslaw.com

*Counsel for Progressive Select Insurance Co.*

17

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed through the CM/ECF system and served through the CM/ECF system this September 23, 2019.

<u>*/s/  Bryan T. West*</u>
Attorney