## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

MICHAEL A. LOPEZ, on behalf of
himself and all others similarly situated,

Plaintiff,

v.                                                    CASE NO.: 0:18-cv-61844-WPD

PROGRESSIVE SELECT
INSURANCE CO.,

Defendant.
_____/

## DEFENDANT PROGRESSIVE SELECT INSURANCE COMPANY'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   SUMMARY OF UNDISPUTED MATERIAL FACTS ........................................... 3

   A.   Lopez's Total Loss Claim. ............................................................................... 3

   B.   Lopez's Policy and Progressive Select's Salvage-Handling Practices .............. 4

   C.   Lopez Sues Progressive Select. ........................................................................ 6

   D.   Lopez's Changing Claims and Damages. .......................................................... 6

III.  ARGUMENT AND CITATION OF AUTHORITY ............................................... 7

   A.   Progressive Select Indisputably Did Not Breach Any Provision of the Policy. ................ 8

   B.   Progressive Select Does Not Require Insureds to Transfer Salvage. ............................. 14

   C.   Lopez's Interpretation of the Policy Would Lead to Absurd Results. ............................ 16

IV.   CONCLUSION ....................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Am. Sec. Ins. Co.*,
    280 S.E.2d 471 (N.C. Ct. App. 1981) ...................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .........................................................................................8

*Auto-Owners Ins. Co. v. Anderson*,
    756 So. 2d 29 (Fla. 2000) ................................................................................14

*BMW of N. Am., Inc. v. Krathen*,
    471 So. 2d 585 (Fla. 4th DCA 1985) ...................................................................10

*Bowman v. State*,
    698 So. 2d 615 (Fla. 2d DCA 1997) ...................................................................14

*Burgess v. Religious Tech. Ctr., Inc.*,
    600 F. App'x. 657 (11th Cir. 2015) ....................................................................10

*Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*,
    845 So. 2d 161 (Fla. 2003) ...............................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .........................................................................................7

*Centex-Rodgers Const. Co. v. Herrera*,
    761 So. 2d 1215 (Fla. 4th DCA 2000) ..............................................................9, 16

*Dwane v. W. Am. Ins. Co.*,
    297 A.2d 865 (N.J. Dist. Ct. Essex Cnty. 1972) ....................................................13

*Erie Ins. Exch. v. Sams*,
    20 N.E.3d 182 (Ind. Ct. App. 2014) ...................................................................16

*Kesinger ex rel. Estate of Kesinger v. Herrington*,
    381 F.3d 1243 (11th Cir. 2004) ...........................................................................7

*First Professionals Ins. Co. v. McKinney*,
    973 So. 2d 510 (Fla. 1st DCA 2007) ...................................................................11

*Fuqua v. Travelers Ins. Co.*,
    734 F.2d 616 (11th Cir. 1984) .............................................................................8

*Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc.*,
  874 So. 2d 26 (Fla. 2d DCA 2004) ...............................................................................15, 17

*Gentry v. Harborage Cottages-Stuart, LLLP*,
  08-14020-CIV, 2008 WL 1803637 (S.D. Fla. Apr. 21, 2008)................................................10

*Hamby v. State Farm Mutual Auto Insurance Co*,
  137 S.W.3d 834 (Tex. Ct. App. 2004) ...................................................................................13

*Henn v. Am. Family Mut. Ins. Co.*,
  894 N.W.2d 179 (Neb. 2017)................................................................................................16

*Jacobs v. Petrino*,
  351 So. 2d 1036 (Fla. 4th DCA 1976) ....................................................................................9

*John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*,
  443 F. App'x 396 (11th Cir. 2011) ......................................................................................17

*Kikendall v. Am. Progressive Ins. Co.*,
  457 So. 2d 53 (La. Ct. App. 1984)........................................................................................13

*Lamb v. Outback Steakhouse of Fla., Inc.*,
  8:13-CV-794-T-35MAP, 2014 WL 12689882 (M.D. Fla. Sept. 4, 2014)...............................9

*Langford v. Federated Guaranty Mutual Insurance Co.*,
  8543 So. 2d 675 (Ala. 1989)............................................................................................12, 13

*Mindis Metals, Inc. v. Transp. Ins. Co.*,
  209 F.3d 1296 (11th Cir. 2000) .............................................................................................7

*Mize v. Jefferson City Bd. of Educ.*,
  93 F.3d 739 (11th Cir. 1996) .................................................................................................7

*Nat'l Ass'n of Prof'l Allstate Agents v. Allstate Ins. Co.*,
  8:01-CV-2137-T-24MSS, 2002 WL 34940469 (M.D. Fla. Apr. 22, 2002) ............................9

*Negron v. CitiMortgage Inc.*,
  16-CIV-61776, 2016 WL 10953267 (S.D. Fla. Oct. 19, 2016) ...............................................9

*Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*,
  11-60447-CIV, 2011 WL 6754063 (S.D. Fla. Dec. 22, 2011) ..............................................10

*Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  734 F. Supp. 2d 1304 (S.D. Fla. 2010) .................................................................................11

*Pawtucket Mut. Ins. Co. v. Gay*,
  786 A.2d 383 (R.I. 2001) .....................................................................................................13

*Siegle v. Progressive Consumers Ins. Co.*,
    788 So. 2d 355 (Fla. 4th DCA 2001) ....................................................................8

*Silvin v. GEICO Gen. Ins. Co.*,
    11-24128-CIV, 2012 WL 12875879 (S.D. Fla. Aug. 16, 2012), *aff'd*, 517 F.
    App'x 781 (11th Cir. 2013) ..............................................................................8

*Simmons v. Provident Mut. Life Ins. Co. of Philadelphia, Pa.*,
    496 So. 2d 243 (Fla. 3d DCA 1986) ..................................................................17

*Stoudt v. Sec. Inv. Co.*,
    140 So. 2d 122 (Fla. 1st DCA 1962) .................................................................15

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*,
    913 So. 2d 528 (Fla. 2005)................................................................................10

*Thorne v. Member Select Ins. Co.*,
    882 F.3d 642 (7th Cir. 2018) ............................................................................16

*Vyfvinkel v. Vyfvinkel*,
    135 So. 3d 384 (Fla. 5th DCA 2014) ................................................................16

**Statutes**

Fla. Stat. § 319.30 ......................................................................................................5, 14

**Other Authorities**

Fed. R. Civ. P. 56.......................................................................................................1, 7

Florida DMV, Bulletin TL-36: Total Loss Settlements Involving
    Insurance Companies (2014)............................................................................17

Johnny Parker*, Replacement Cost Coverage: A Legal Primer*, 34 Wake
    Forest L. Rev. 295 (1999)..................................................................................16

S.D. Fla. L.R. 56.1 ......................................................................................................1, 3

Merriam-Webster Dictionary..........................................................................................14

Defendant Progressive Select Insurance Co. ("Progressive Select"), under Federal Rule of Civil Procedure 56 and S.D. Fla. L.R. 56.1, moves for summary judgment on the remaining claim in Plaintiff Michael A. Lopez's ("Plaintiff" or "Lopez") First Amended Complaint, Dkt. No. 18 (the "Complaint"), because there is no genuine issue of material fact and Progressive Select is entitled to judgment as a matter of law. In support of this motion, Progressive Select relies on the following memorandum of law and the accompanying Statement of Undisputed Material Facts ("SMF") Supporting Its Motion for Summary Judgment (and exhibits referenced therein and/or attached thereto).

## I.      INTRODUCTION

Plaintiff Michael Lopez is a Progressive Select insured whose insurance policy with Progressive Select (the "Policy," attached as Ex. 1 to SMF) expressly provides that Progressive Select will pay for the "*loss* to a . . . covered auto." SMF ¶ 15 (emphasis added).  The Policy further expressly provides that the limit of liability for any loss is the "actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible." SMF ¶ 16. On or about April 27, 2017, Lopez was involved in an automobile accident that resulted in his covered auto being deemed a total loss. Shortly thereafter, Progressive Select paid Lopez the actual cash value of his vehicle at the time of the loss (*i.e.*, the actual cash value ("ACV") of the vehicle in its "pre-loss condition"). As required by Florida law, Lopez tendered salvage title for his total-loss vehicle to Progressive Select as a result of the insurance settlement. Approximately a year and half later, Lopez filed this lawsuit claiming that Progressive Select should have paid him some unspecified sum for the salvage value of the vehicle in addition to the actual cash value that Progressive Select already paid him to settle his insurance claim. In other words, Lopez contends that Progressive Select should have paid him the actual cash value for his

vehicle—as the Policy expressly requires—and then paid him again for the salvage value of the vehicle. This far-fetched theory has no basis in the language of the Policy or Florida law, would provide an obvious windfall to Lopez, and cannot form the basis of a claim for breach of contract.

*First*, Lopez cannot pursue a breach of contract claim because he acknowledges that the Policy does not support his claims. Under Lopez's theory, Progressive Select somehow breached the Policy by retaining the amount it recovered for Lopez's salvage vehicle after Lopez transferred title to it. But there is no Policy provision requiring Progressive Select to pay Lopez some amount in excess of ACV for the "salvage value" of his total loss vehicle. Instead, the Policy required Progressive Select to pay Lopez for the "loss" to the vehicle—the ACV, less the deductible. Progressive Select indisputably paid Lopez that amount in full satisfaction of its obligations under the Policy. Accordingly, this Court should join every court that has analyzed a claim like Lopez's and reject it.

*Second*, to the extent Lopez contends that he was improperly "required" to tender his total-loss vehicle to Progressive Select in the first place, there is no evidence in the record to support such a claim. The record shows that Progressive Select permits insureds to retain salvage title and that, in those situations, Progressive Select pays for the amount of the "loss" suffered by the insured, which is calculated by deducting the projected salvage value of the total-loss vehicle from the ACV. This is consistent with the terms of the Policy, which only requires payment for the amount of "loss" incurred by an insured.

*Finally*, accepting Lopez's legal theory would upend the insurance industry by requiring insurers to pay their insureds an economically irrational windfall, as explained in the accompanying expert declaration of University of Florida Risk Management Professor Chris

James (the "James Report," filed as Exhibit 6 to SMF). The purpose of insurance is to place insureds in the same or a similar position as they occupied before their loss occurred—not to enrich insureds by both compensating them for their losses and then paying them some additional sum that was *already* encompassed in the loss payment. Indeed, the Policy clearly bars this kind of duplicate recovery by an insured which would, in effect, incentivize insureds to wreck their covered vehicles. It simply makes no sense—and is certainly not required by the law or the Policy—to require Progressive Select to pay Lopez the actual cash value for his vehicle as required by his Policy and then to require Progressive Select to also pay Lopez the salvage value of the total-loss vehicle.

Lopez's interpretation of the Policy is entirely divorced from Florida law, the Policy's plain language, and common sense. The Court should grant summary judgment for Progressive Select.

## II.   SUMMARY OF UNDISPUTED MATERIAL FACTS[1]

### A.  Lopez's Total Loss Claim.

On or about April 27, 2017, Lopez was involved in a motor vehicle accident while driving his Nissan Murano. SMF ¶ 3. Lopez does not remember the details of the accident. *Id.* ¶ 4. The Murano had gone off the road, run into a pole, and come to rest on concrete pillars in front of a nearby building. *Id.* ¶ 5. The local police department responded to the incident and had the Murano towed to a local storage yard. *Id.* ¶ 6.

After the police towed the vehicle away, Lopez called Progressive Select to report the accident. *Id.* ¶ 6. Lopez does not recall anything significant about that conversation or any follow-up conversations with Progressive Select, except that he asked Progressive Select to pay

---

[1] Pursuant to S.D. Fla. L.R. 56.1, Progressive Select is filing contemporaneously herewith a separate Statement of Facts.

for his broken reading glasses and some other personal articles, and Progressive Select informed him those items were not covered. *Id.* ¶ 8. Lopez never asked Progressive Select if he could keep the totaled Murano, what Progressive Select would do with the totaled vehicle, or whether Progressive Select would remit to him the money it recovered for the Murano once it was sold as salvage. *Id.* ¶ 9.

Progressive Select covered the claim, deemed the Murano to be a total loss, and paid Lopez the ACV of the Murano to settle Lopez's claim. *Id.* ¶ 10. Lopez admits that the ACV that Progressive Select paid for the Murano was fair, and he does not contend he should have been paid more. *Id.* ¶ 11. On the day Lopez went by Progressive Select's office to pick up his ACV check, Lopez also signed certain title paperwork that transferred the title to the salvaged Murano to Progressive Select. *Id.* ¶ 12. Lopez did not ask any questions about the salvage paperwork or his salvage vehicle at this time, although admittedly he could have. *Id.* ¶ 13. At the time Lopez's total loss claim was resolved, he had no issues with the amount of money Progressive Select paid him to settle his claim. *Id.* ¶ 14.

### B.  Lopez's Policy and Progressive Select's Salvage-Handling Practices

Lopez's Policy states that Progressive Select will "pay for sudden, direct, and accidental *loss* to a . . . covered auto" and that it will "pay for the *loss* in money." SMF ¶¶ 15-16 (emphasis added). The Policy also states that the *limit* of Progressive Select's liability is the lower of several values, including the ACV. *Id.* In most cases, when a vehicle is deemed to be a total loss, Progressive Select pays the pre-loss ACV of the vehicle (minus any deductible) and takes title to the salvage vehicle. *Id.* ¶ 20. In those situations, the insureds recover the pre-loss value, and, in exchange, the insureds give up any rights to the post-loss value of the car. *Id.* ¶ 21. This nets out to the insureds receiving the amount of the "loss" because they are losing the vehicle and receiving the full pre-loss ACV of the vehicle. *Id.* ¶ 22.

4

Progressive Select does not, however, require insureds to transfer title to their totaled vehicles. While insureds ordinarily prefer to tender their totaled vehicles to Progressive Select for handling, an insured who wishes to retain a vehicle may do so. *Id.* ¶ 23. In that situation, Progressive Select determines the amount of the insured's "loss" by deducting the projected value of the salvage vehicle from the pre-loss ACV (*i.e.*, it determines the decrease value to the vehicle caused by the loss event) and paying the resulting amount to settle the claim. *Id.* ¶ 24. Progressive Select then rebrands the title, as required by Florida law, and returns the rebranded title to the insured. *Id.* ¶ 25.[2]

This practice is consistent with basic insurance principles, common sense, and the terms of the Policy. The ACV of any given vehicle (or any other asset) necessarily includes its salvage value. *Id.* ¶ 33. Paying for salvage value in addition to ACV would amount to paying for the same loss twice, creating a windfall for insureds and economically incentivizing them to total their vehicles. *Id.* ¶ 34. It would also run contrary to Policy, which states that "[n]o one is entitled to duplicate payments for the same elements of damages." SMF ¶ 19.

---

[2] *See* Fla. Stat. § 319.30(3)(b):

> [A]n insurance company that pays money as compensation for the total loss of a motor vehicle or mobile home shall obtain the certificate of title for the motor vehicle or mobile home, make the required notification to the National Motor Vehicle Title Information System, and, within 72 hours after receiving such certificate of title, forward such title . . . to the department for processing. The owner or insurance company, as applicable, may not dispose of a vehicle or mobile home that is a total loss before it obtains a salvage certificate of title or certificate of destruction from the department.

**C. Lopez Sues Progressive Select.**

Approximately a year and a half after the resolution of his claim, Lopez decided to file this lawsuit.[3] His decision had nothing to do with the language of the Policy or any rights Lopez thought he had under it, because Lopez had never read the Policy. *Id.* ¶ 27. Instead, after seeing a number of "shops buying damaged vehicles" and knowing those shops "take [the salvage vehicle] and sell it for parts, [] they rebuild it, [or] they repair it," Lopez asked some friends whether people are compensated for their salvaged vehicles after an accident. *Id.* ¶ 28. None of Lopez's friends had ever received such a payment following a total loss. *Id.* ¶ 29. Nevertheless, after Lopez posed a "hypothetical question" to his now-lawyer in this case about whether he had a claim for the salvage value of his car, he decided to file this class action lawsuit. *Id.* ¶ 30.

**D. Lopez's Changing Claims and Damages.**

Lopez's sole remaining claim is predicated on the contention that because "*no [Policy] provision allows* [Progressive Select] to take Lopez's and Class and Subclass Members' total loss vehicles without paying them their salvage values," Progressive Select violated the Policy by taking title to the salvaged Murano in exchange for paying Lopez its pre-loss ACV. Pl.'s Mot. Class Cert. [Dkt. 72] at 5 (emphasis added); *see also* SMF ¶ 31. Of course, embedded in that claim is the tacit acknowledgment that Progressive Select did not breach any provision of the Policy.

This was not always Lopez's theory. At the outset, Lopez alleged that: (1) Progressive Select *required* its insureds to transfer salvage title to their vehicles following a total loss, Am. Compl. ¶ 48; and (2) doing so violated Progressive Select's obligation under the Policy to pay the "agreed or appraised" value if it retained certain covered property, *id.* ¶ 50. In discovery,

---

[3] The lawsuit initial challenged Progressive Select's methodology for determining ACV, but Lopez has dropped that claim. Dkt. 84-1.

however, Lopez learned that Progressive Select did not "require" insureds to transfer the salvage title of their total loss vehicles to Progressive Select. SMF ¶ 23. And in any event, Lopez now contends that, at best for him, Progressive Select's salvage process is not addressed by the Policy one way or the other. *Id.* ¶ 31.

Lopez does not believe the settlement check reflected the salvage value of the Murano, but he does not know how much the salvage value should have been or how it should have been calculated—for example, Lopez thinks the engine, hood, and windows were still good. *Id.* ¶ 35. Lopez does not know what Policy provision Progressive Select breached. *Id.* ¶ 36. Lopez does not think his salvage claim relates to coverage. *Id.* ¶ 38.

## III.    ARGUMENT AND CITATION OF AUTHORITY

"The district court must enter an order of summary judgment when, taking the facts in the light most favorable to the nonmoving party, there is 'no genuine issue as to any material fact.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citation omitted); s*ee also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "Where the nonmoving party has failed to make a sufficient showing 'to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' there exist no genuine issues of material fact." *Mize*, 93 F.3d at 742 (citation omitted). Further, "a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004). That is, "the mere presence of an alleged factual dispute between the parties does not make summary judgment improper; a genuine issue of *material* fact must exist for a court to deny summary judgment." *Mindis Metals, Inc. v.*

*Transp. Ins. Co.*, 209 F.3d 1296, 1298 (11th Cir. 2000) (emphasis in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**A. Progressive Select Indisputably Did Not Breach Any Provision of the Policy.**

>   1. *Lopez's Theory That No Policy Provision "Allows" Progressive Select to Take Salvage Title Cannot Support a Claim for Breach of Contract.*

The Policy is clear that the limit of Progressive Select's liability is the lowest of ACV, replacement value, or the cost of repair of the vehicle. SMF ¶¶ 16-17. The Policy is also clear that Progressive Select will not pay twice for the same item of damage. *Id.* ¶ 19. Lopez does not dispute, at least for purposes of the remaining claim in this case, that Progressive Select paid him ACV for his vehicle. *Id.* ¶ 11. In addition, while limiting Progressive Select's liability to ACV, the Policy expressly contemplates that Progressive Select may take title to Lopez's salvage vehicle. *See id.* ¶ 18, citing Policy at 39 (noting that when Progressive Select "retain[s] salvage" it has no duty to preserve the salvage vehicle). As a result, the "limit of liability provision means what it says": Progressive Select was obligated to pay Lopez the ACV of his totaled Murano, less the deductible. *Siegle v. Progressive Consumers Ins. Co.*, 788 So. 2d 355, 360 (Fla. 4th DCA 2001), *approved*, 819 So. 2d 732 (Fla. 2002). Progressive Select had no obligation to pay Lopez any more than that, including any amount it may have recovered for the salvage value of the totaled vehicle, which in any event, would amount to payment for the same item of damages twice. SMF ¶¶ 32-24 (citing to James Report, which explains that salvage value is inherently included in an asset's ACV). *See Fuqua v. Travelers Ins. Co.*, 734 F.2d 616, 620 (11th Cir. 1984) (affirming summary judgment to insurer; noting that the plaintiff-insured's "right to coverage is necessarily tied to and limited by the coverage applicable to such vehicle and as governed by the policy's limits of liability clause") (citation omitted); *Silvin v. GEICO Gen. Ins. Co.*, 11-24128-CIV, 2012 WL 12875879, at *5 (S.D. Fla. Aug. 16, 2012), *aff'd*, 517 F. App'x 781 (11th Cir.

2013) (dismissing claims against insurer based on the "the plain language of the Limit of Liability provision" in insurance policy); *see also Centex-Rodgers Const. Co. v. Herrera*, 761 So. 2d 1215, 1216 (Fla. 4th DCA 2000) ("Where full recovery has been made and the insured has been made whole, any payments to the insured exceeding the actual damages may be viewed as a double recovery thus equitably entitling the insurer to subrogation against the insured's recovery.") (citing *Humana Health Plans v. Lawton*, 675 So. 2d 1382, 1384 (Fla. 5th DCA 1996)).

Because no Policy term required Progressive Select to pay *more* than the limits of liability under the Policy, Lopez asserts that Progressive Select breached the Policy by taking title to his salvage vehicle in exchange for payment of pre-loss ACV because the Policy does not spell out that (a) an insured may tender his vehicle to Progressive Select, and (b) Progressive Select is permitted to sell the totaled vehicle for salvage and retain any proceeds of the sale. *See* Dkt. 72 at 5 (Plaintiff's class certification motion asserting that Progressive Select breached the Policy because "no provision allows" Progressive Select to take salvage vehicles without paying salvage value); 7 (describing common question as whether the Policy "allows" Progressive Select to take salvage title). This theory, however, ignores black-letter Florida contract law.

"Florida courts will not impose contractual rights where a contract is silent as to a particular matter." *Nat'l Ass'n of Prof'l Allstate Agents v. Allstate Ins. Co.*, 8:01-CV-2137-T-24MSS, 2002 WL 34940469, at *6 (M.D. Fla. Apr. 22, 2002) (citing *Jacobs v. Petrino*, 351 So. 2d 1036, 1039 (Fla. 4th DCA 1976)); *see also Negron v. CitiMortgage Inc.*, 16-CIV-61776, 2016 WL 10953267, at *6 (S.D. Fla. Oct. 19, 2016) (dismissing breach of contract claim on the grounds that "alleging that the mortgage contract did not allow a particular action is not the same as alleging that the mortgage contract outright prohibited such action"); *Lamb v. Outback*

*Steakhouse of Fla., Inc.*, 8:13-CV-794-T-35MAP, 2014 WL 12689882, at *8 (M.D. Fla. Sept. 4, 2014) (dismissing breach of contract claim and holding that "in instances where a contract simply does not mention" certain rights, Florida law does not permit "courts to impose such additional duties 'under the guise of construction'"); *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, 11-60447-CIV, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011) (granting partial summary judgment to insurer on a coverage issue where "the plain language of the policy [did] not afford coverage" because the coverage plaintiff sought was not mentioned in the policy).[4]

Lopez must identify a specific Policy provision that shows Progressive Select was required to pay him the pre-loss *and* post-loss value of his vehicle. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x. 657, 664 (11th Cir. 2015) (affirming dismissal where plaintiff "failed to identify the specific contractual provisions that the defendants breached"); *Gentry v. Harborage Cottages-Stuart, LLLP*, 08-14020-CIV, 2008 WL 1803637, at *3 (S.D. Fla. Apr. 21, 2008) (dismissing complaint where "allegations fail to provide sufficient reference to a specific term of the Purchase Agreements that was breached"). Lopez has not identified—and cannot identify—such a term. Accordingly, Progressive Select is entitled to summary judgment.

### 2. *No Policy Provisions Could Possibly Support Lopez's Claim.*

Initially, Lopez based his case on the theory that Progressive Select violated the following term in the Policy:

> At our expense, we may return any recovered stolen property to you or to the address shown on the declarations page, with payment for any damage resulting from the theft. We may keep all or part of the property at the agreed or appraised value.

---

[4] *See also Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) ("We further held that courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'") (internal citation omitted); *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985) ("[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted.").

*See* Compl. ¶¶ 50-52 (citing Policy at 30); Policy at 30. It is unclear whether this is still Lopez's theory; he conspicuously omitted any reference to it in his motion for class certification (likely because of the myriad individual issues associated with determining the "agreed or appraised" value of any given car). But if this provision is still the basis for Lopez's claim, the claim still fails as a matter of law.

*First*, under Lopez's theory, the second sentence of this two-sentence paragraph would have to stand in isolation so as to make the word "property" broadly applicable to any covered automobile. Read as a whole, however, "the property" clearly refers to the "recovered stolen property" addressed in the prior sentence. This is consistent with Florida law: "[C]ourts must not construe insurance policy provisions in isolation, but instead should read all terms in light of the policy as a whole, with every provision given its full meaning and operative effect." *See Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010)); *accord First Professionals Ins. Co. v. McKinney*, 973 So. 2d 510, 514 (Fla. 1st DCA 2007) ("[A] single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders.").

*Second*, even if the term "property" is applied broadly to include salvage vehicles, the only rational interpretation of the sentence Lopez identified is that Progressive Select may keep the property at issue after paying the pre-loss ACV of the vehicle to its insured. That is, if Progressive Select and an insured have agreed on the pre-loss ACV of a totaled vehicle, or the pre-loss value of that vehicle has been determined by an appraiser pursuant to the Policy's appraisal provision, then Progressive Select may keep the property by paying that amount. Indeed, the salvage value of any asset is already encompassed in its ACV, so it would hardly

make sense to interpret this provision as requiring Progressive Select to pay some amount in addition to its pre-loss value. SMF ¶ 33.

*Third*, the Policy expressly *forbids* duplicate recovery for the same item of damage. SMF ¶ 19. By seeking both the pre-loss ACV of the Murano—an amount that necessarily includes the salvage value of the vehicle—as well as a separate payment for the salvage value of the vehicle, however, that is exactly what Lopez is attempting to do. SMF ¶¶ 32-34. Lopez cannot be entitled to a payment that is expressly prohibited by the terms of the Policy.

Either the Policy provision requiring Progressive Select to pay the "agreed or appraised" value is entirely inapplicable to salvage vehicles or, alternatively, Progressive Select complied with the provision by paying Lopez the pre-loss ACV of the Murano. No matter how interpreted, it cannot support Lopez's claim.

### 3. The Only Courts That Have Addressed Claims Similar to Lopez's Claim Have Adopted Progressive Select's Interpretation of the Policy.

Finally, in every similar case that Progressive Select has identified, the courts roundly rejected the premise of Lopez's claim—*i.e.*, that an insured is entitled to both pre-loss ACV and the residual salvage value.

In *Langford v. Federated Guaranty Mutual Insurance Co.*, the Alabama Supreme Court affirmed the trial court's grant of summary judgment for the insurer where the insured sought salvage value under nearly identical policy language. 543 So. 2d 675, 677-78 (Ala. 1989). In rejecting the plaintiff's claim for salvage value—identical to Lopez's claim here—the *Langford* court noted that "the insurer's liability is for 'loss *to* the automobile,' not loss *of* the use and enjoyment of the automobile." *Id*. at 678 (emphasis in original). The court went on to hold that:

> Obviously, when a collision claim is settled on the basis of a total loss, if an insured were entitled to receive the agreed actual cash value of the property plus retain the property (assuming the property was worth anything after the loss) then the insured would be receiving and the insurer would be paying to the insured

more than the difference between the value of the vehicle before and after the loss. In a claim settled on the basis of a total loss, this would amount to the insured's receiving and the company's paying more than the actual cash value, which would violate the provision that the limit of the insurer's liability is the actual cash value of the vehicle.

*Id.* at 677.

In *Hamby v. State Farm Mutual Auto Insurance Co.*, the plaintiff also sought recovery of salvage value based on policy language that was materially identical to the policy language on which Lopez relies. 137 S.W.3d 834 (Tex. Ct. App. 2004). The Texas Court of Appeals affirmed the trial court's dismissal of that claim, holding that:

[A]lthough [the insured] asserts that he was coerced into accepting the actual cash value and assigning the title to [the insurer], the record reflects that he was offered the opportunity to accept $ 18,470.75 (actual cash value minus $7,000 salvage value) and keep the car himself. He chose to accept the higher payment; thus he was required to turn the car and its title over to [the insurer] at its request. Accordingly, [the insured's] pleadings, taken as true, do not show a breach of contract

*Hamby*, 137 S.W.3d at 836–37; *see also Pawtucket Mut. Ins. Co. v. Gay*, 786 A.2d 383, 386–87 (R.I. 2001) (examining similar policy language and holding that the insurer had the absolute right to either pay the ACV of the totaled vehicle and take title or pay a lesser amount should the insured desire to keep the salvaged vehicle); *Allen v. Am. Sec. Ins. Co.*, 280 S.E.2d 471, 473 (N.C. Ct. App. 1981) (holding that where an insurer has paid the pre-loss value to settle a claim for a total loss vehicle, the "vehicle's owner [can] be expected to give up [their] rights in the vehicle, including [their] right to the proceeds from salvage of the vehicle"); *Kikendall v. Am. Progressive Ins. Co.*, 457 So. 2d 53, 58 (La. Ct. App. 1984) ("The insurer is also entitled to a credit for salvage value, if there is any."); *Dwane v. W. Am. Ins. Co.*, 297 A.2d 865, 869 (N.J. Dist. Ct. Essex Cnty. 1972) (finding insurer was entitled to retain the loss vehicle for salvage where insurer was required to pay insured the value of the loss vehicle).

13

There is no basis for departing from these well-reasoned decisions here. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 36 (Fla. 2000) (noting when a court interprets insurance policy language, it is appropriate for the court to consider out-of-state cases that demonstrate established custom and usage in the insurance industry).

**B. Progressive Select Does Not Require Insureds to Transfer Salvage.**

Lopez's claim is also fundamentally flawed because Progressive Select does not "require" insureds to permanently transfer salvage title to settle their claims, as initially alleged.[5] *See* Compl. ¶¶ 46, 52, 61. Progressive Select insureds are free to retain their salvage vehicles if they wish to do so. SMF ¶ 23. In such circumstances, rather than paying the insureds for the full, pre-loss ACV of their vehicles, Progressive Select pays the insureds for the amount of their "loss"—which is all that is actually required under the Policy. *See id.* ¶¶ 15, 24, citing Policy at 23, 30 (stating that Progressive Select will "pay for sudden, direct, and accidental *loss* to a . . . covered auto" and that it will "pay for the *loss* in money") (emphasis added).

Progressive Select determines the amount of the "loss" by subtracting the post-loss value of the loss vehicle (*i.e.,* the projected salvage price) from the pre-loss value of the loss vehicle (*i.e.,* its pre-loss ACV). *Id.* ¶ 24. This is consistent with the plain meaning of "loss," which is the amount by which the value of the vehicle was reduced as a result of the covered incident. *See* Merriam-Webster Dictionary (defining loss as "decrease in amount, magnitude, or degree"); *see also Bowman v. State*, 698 So. 2d 615, 616 (Fla. 2d DCA 1997) (finding that the "amount of

---

[5] Progressive complies with Florida titling law which requires Progressive, at a minimum, to take title to salvage vehicles for the purpose of having the title branded as "salvage" where required. *See* Fla. Stat. § 319.30(3) ("[A]n insurance company that pays money as compensation for the total loss of a motor vehicle or mobile home shall obtain the certificate of title for the motor vehicle."). If the insured so desires, Progressive will then return the salvage title back to the insured along with payment for the loss to the vehicle (*i.e.,* the difference between pre-loss and post-loss value). Notably, nothing in the Florida statute requires insurers to pay some additional amount when they take salvage title to total loss vehicles.

loss" suffered by an insured was the difference between the estimated cash value of the property prior to the loss and the residual value of the salvaged property that remained in insured's possession); *Stoudt v. Sec. Inv. Co*., 140 So. 2d 122, 124–25 (Fla. 1st DCA 1962) ("[T]he insurance company has discharged its full obligation by paying in cash the difference between the value of plaintiff's automobile at time of loss and the value of the salvage remaining after the accident which was owned by plaintiff and disposed of by him in settlement of his account with the finance company."); *c.f.*, *Swire Pac. Holdings, Inc. v. Zurich Ins. Co*., 845 So. 2d 161, 166 (Fla. 2003) (holding the lack of a definition for "loss or damage" does not, alone, create an ambiguity); *Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc*., 874 So. 2d 26, 33 (Fla. 2d DCA 2004) (holding that "the lack of a definition for 'amount of loss or damage' does not in and of itself create ambiguity, nor should a single provision be read in isolation").

Lopez evidently does not have any problems with this practice, as he proposes excluding insureds who retain salvage title to their vehicles from the putative class he seeks to represent. *See* Dkt. 72 at 2 n.2. But the fact that he does not challenge this practice of paying the amount of "loss" to insureds who keep their salvage vehicles only undercuts his own claim. When Progressive Select pays full, pre-loss ACV and takes title to the salvage, the undisputed net result is that Progressive Select has paid for the amount of "loss" incurred by the insured under the Policy (*i.e.,* the insured loses the full value of the vehicle and is paid the full value of the vehicle). That Lopez tacitly approves treating these two situations—owner-retained salvage and Progressive Select-retained salvage—differently demonstrates how divorced from reality and the terms of the Policy Lopez's current claim truly is.

**C. Lopez's Interpretation of the Policy Would Lead to Absurd Results.**

Lopez's interpretation of the Policy fails for the additional reason that it is nonsensical and would lead to absurd results that were clearly not intended by the parties. Florida law on contract interpretation is clear:

> A true ambiguity does not exist in a contract merely because the contract can possibly be interpreted in more than one manner. Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the trial court to prevent such interpretations. Accordingly, contractual language is ambiguous only if it is susceptible to more than one reasonable interpretation. It thus follows that where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner.

*Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 385–86 (Fla. 5th DCA 2014) (internal quotation marks, citations, and alterations omitted). Lopez's interpretation of the Policy would violate this guidance which, as discussed above, is made plain in the language of the Policy itself. *See* SMF ¶ 19 (double recoveries are barred under the Policy); *see also Centex-Rodgers Const. Co*, 761 So. 2d at 1216 ("Where full recovery has been made and the insured has been made whole, any payments to the insured exceeding the actual damages may be viewed as a double recovery.").

ACV policies are meant to make the insureds whole, not put them in a better position as compared to where they started. *Thorne v. Member Select Ins. Co*., 882 F.3d 642, 649 (7th Cir. 2018) ("[T]he goal of property insurance is indemnity; i.e., 'to make the insured whole but never to benefit him.'") (internal citation omitted); *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 185 (Neb. 2017); *Erie Ins. Exch. v. Sams*, 20 N.E.3d 182, 190 (Ind. Ct. App. 2014); Johnny Parker*, Replacement Cost Coverage: A Legal Primer*, 34 WAKE FOREST L. REV. 295, 296 (1999) (stating that the purpose of ACV insurance "is to make the insured whole, but never to benefit him because a loss occurred. In other words, to indemnify means simply to place the insured back in the position she enjoyed prior to loss."); *see also* Florida DMV, BULLETIN TL-36: TOTAL

LOSS SETTLEMENTS INVOLVING INSURANCE COMPANIES (2014) at 3, attached as Ex. A (instructing that insurers are *required* to take the title of a total loss vehicle when they have paid an insured ACV). Under Lopez's interpretation of the Policy, however, he would be made more than whole. He would not only receive the full, pre-loss ACV of his vehicle (*i.e.*, the value of the vehicle just before the wreck), he would also retain any value present in the salvaged vehicle. *See* James Report ¶¶ 27-31.

There is also good reason why Lopez's interpretation of the Policy is contrary to the understanding of ACV insurance policies under Florida law: accepting Lopez's interpretation would lead to "troubling, if not absurd, results" by *incentivizing insureds to total their cars*. *Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc.*, 874 So. 2d 26, 34 (Fla. 2d DCA 2004). Under Lopez's interpretation of the Policy, it would actually be profitable for insureds to total their cars, particularly where the vehicles retained significant salvage value. *See* James Report ¶¶ 27-31. Such an interpretation would upend the insurance industry in Florida, and is clearly not a result intended by the parties here. *See Simmons v. Provident Mut. Life Ins. Co. of Philadelphia, Pa.*, 496 So. 2d 243, 245 (Fla. 3d DCA 1986) (finding that the rule of reason applies to insurance policies meaning they "must be given practical, sensible interpretations in accordance with the natural meaning of the words employed"). For this reason, too, Lopez's interpretation of the Policy should be rejected and Progressive Select is entitled to summary judgment on Lopez's claims. *John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 F. App'x 396, 399 (11th Cir. 2011) (finding that an unreasonable interpretation does not create ambiguity and without ambiguity there is no genuine issue of material fact).

## IV.    CONCLUSION

Lopez's claims against Progressive Select in this case are entirely untethered from the plain language of his insurance Policy and common sense. Progressive Select respectfully requests that the Court grant its motion for summary judgment and dismiss this case in its entirety.

Respectfully submitted this 1st day of November 2019.

/s/ Marcy Levine Aldrich
Marcy Levine Aldrich (FBN 0968447)
Bryan T. West (FBN 83526)
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida 33131
Telephone: 305-374-5600
Telefax: 305-374-5095
marcy.aldrich@akerman.com
bryan.west@akerman.com

Jeffrey S. Cashdan
(pro hac vice granted)
Zachary A. McEntyre
(pro hac vice granted)
J. Matthew Brigman
(pro hac vice granted)
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
jcashdan@kslaw.com
zmcentyre@kslaw.com
jbarrett@kslaw.com
mbrigman@kslaw.com

Julia C. Barrett
(pro hac vice granted)
KING & SPALDING LLP
500 W. 2nd Street

18

Austin, Texas 78701
Tel: (512) 457-2000
Fax: (512) 457-2100
jbarrett@kslaw.com


*Counsel for Progressive Select Insurance Co.*

### <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that a true and correct copy of the foregoing was filed through the CM/ECF system and served through the CM/ECF system this November 1, 2019.

*/s/  Bryan T. West*
Attorney