# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

MICHAEL A. LOPEZ, on behalf of
himself and all others similarly situated,

Plaintiff,

v.                                                    CASE NO.: 0:18-cv-61844-WPD

PROGRESSIVE SELECT
INSURANCE CO.,

Defendant.

_____/

### DEFENDANT PROGRESSIVE SELECT INSURANCE COMPANY'S
### REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Progressive Select Insurance Co. ("Progressive Select"), under Federal Rule of Civil Procedure 56 and S.D. Fla. L.R. 56.1, files this Reply in Support of its Motion for Summary Judgment (the "Motion") in this matter.

## I.   INTRODUCTION

Plaintiff Michael Lopez does not dispute that Progressive Select paid him the actual cash value ("ACV") of his total loss vehicle—the value of the vehicle immediately before the loss—as set forth in the limits of liability section of his insurance Policy. Statement of Undisputed Material Facts ¶¶ 11, 14, Dkt. 93 ("SMF"). Lopez does not contend that Progressive Select told him that he was required to tender his totaled vehicle as a condition of receiving payment. SMF ¶¶ 12–13. Nor does he contend that he even wanted to retain the vehicle; in fact, he readily admitted that he had no interest in keeping the vehicle at that time. SMF ¶ 37. And Lopez does not deny that, having already been paid the pre-loss value of his vehicle, he now seeks a *second* payment for the same vehicle, this time for the value of the vehicle *after* the loss. Opp. at 2. Lopez identifies no provision of the Policy or Florida law entitling him to two payments for the same vehicle (SMF ¶¶ 31, 36), and he has no meaningful rebuttal to the unequivocal Policy language stating just the opposite: Progressive Select does not make duplicative payments.

These are the undisputed facts of Lopez's claim and, based on these facts, the claim fails as a matter of law. Lopez was fully compensated for the value of his total loss vehicle, and he is not entitled to the windfall he would undeniably reap if Progressive Select were required to pay him again. Rather than confronting these facts, Lopez concocts a claim based on a counterfactual scenario in which he wanted to retain his totaled vehicle but was required to tender it to Progressive Select as an "unwritten condition" of receiving payment for his claim. Florida law does not permit hypothetical breach of contract claims based on artificial facts. But even putting that aside, Lopez's claim fails because it ignores the plain language of his own Policy.

The question for this Court is whether the undisputed evidence establishes that Progressive Select paid Lopez everything it owed him under the plain language of his Policy—not some other insurance policy not in effect here. It does. The Court, therefore, should grant Progressive Select's motion and enter summary judgment in its favor.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Plaintiff Still Has Not Identified a Policy Provision That Progressive Select Breached, and He Cannot Pursue a Hypothetical Claim.

At no point in this case, including in his Opposition, has Lopez identified any Policy provision that required Progressive Select to pay him both the *pre*-loss value of his vehicle (ACV) and also the *post*-loss value of the same vehicle (salvage value). *See generally* Opp. Instead, Lopez asserts that Progressive Select "is obligated to pay (and as a matter of course did pay) [insureds] what it deemed the 'actual cash value of the . . . damaged property at the time of the loss,'" regardless of whether Progressive Select keeps a salvage vehicle. Opp. at 4. But the Policy did not require Progressive Select to pay Lopez ACV; ACV is one of *the limits of Progressive Select's liability*. *See* SMF ¶¶ 16–17. The Policy required Progressive Select to pay for Lopez's "loss." *Id.* ¶ 15. Progressive Select did that by paying Lopez the full ACV in exchange for salvage title to the totaled vehicle. *Id.* ¶¶ 10–11, 22. If Progressive Select had both paid Lopez ACV and permitted him to retain title to his salvage vehicle—even though he did not want it, much less ask to keep it—Progressive Select would have paid Lopez for more than his loss. It would have bestowed on him a duplicative recovery, which the Policy expressly forbids. Policy [Dkt. 72-1] at 29 ¶ 4; SMF ¶ 19. Because Lopez has not identified any Policy provision that required Progressive Select to pay anything more, his claim fails as a matter of law. *E.g.*, *Nat'l Ass'n of Prof'l Allstate Agents v. Allstate Ins. Co*., 8:01-cv-2137-T-24MSS, 2002 WL 34940469, at *6 (M.D. Fla. Apr. 22, 2002) (citing *Jacobs v. Petrino*, 351 So. 2d 1036, 1039 (Fla. 4th DCA 1976)); *see also Negron v. CitiMortgage Inc*., 16-cv-61776, 2016 WL 10953267, at *6 (S.D. Fla. Oct. 19, 2016) (dismissing breach of contract claim on the grounds that "alleging that the mortgage contract did not allow a particular action is not the same as alleging that the mortgage contract outright prohibited such action").

In addition, the Court should grant summary judgment for Progressive Select because Lopez's Opposition makes clear that Lopez is attempting to pursue a hypothetical claim based on a counterfactual scenario. It is undisputed that Lopez did not want to retain his salvage vehicle, and so he was out of pocket nothing when he tendered it to Progressive Select in exchange for ACV. SMF ¶¶ 32–34, 37. Even if Progressive Select had imposed an "unwritten condition"— and it did not—Lopez has no standing to sue Progressive Select for an allegedly "unwritten condition" that did not result in any injury to him. *See Auto Dealer Solutions, Inc. v. Southern Owners Ins. Co.*, No. 8:17-cv-2525-T-24TGW, 2018 WL 4600674, at *2 (M.D. Fla. Jan. 25,

2

2018) (dismissing breach of contract claim based on "hypothetical facts" for lack of Article III standing); *Chipman v. Chonin*, 597 So. 2d 363, 364 (Fla. 3d DCA 1992) (no proximate cause where plaintiff seeks damages based on his own, voluntary actions).

      **B.**      **Lopez's Reliance on Other Policies Is Unavailing.**

      Rather than addressing his own Policy, Lopez relies on extraneous insurance policies that are not relevant here. In fact, Lopez never even identified or produced these policies in discovery, even though they were directly responsive to Progressive Select's discovery requests. *See* Def.'s First RPD Nos. 16, 31 (seeking all documents supporting Lopez's assertion that he is entitled to salvage value and supporting any of his claims), attached as Ex. A. This alone warrants disregarding the section of Lopez's brief addressing these policies. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *King v. Akima Glob. Servs., LLC*, 323 F.R.D. 403, 410 (S.D. Fla. 2017) (barring party from relying on undisclosed evidence at summary judgment stage).

      Even if the Court considers the undisclosed policies, they do not support Lopez's claim. First, language used in other policies is irrelevant in interpreting Lopez's Policy. Lopez's Policy is clear on its face that Lopez is entitled to the amount of "loss" not to exceed the ACV, and "the words used by the parties must be given their plain and ordinary meaning." *Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3d DCA 1999). Moreover, even if there were some "ambiguity" in Lopez's Policy (and there is not), the extraneous policies are not relevant parol evidence because they do not bear on the parties' intentions in agreeing to Lopez's Policy. The policies in no way involve Lopez, are up to fourteen years old, and applied to different types of covered property. *See Morris v. MGZ Properties, LLC*, 251 So. 3d 929, 930 (Fla. 4th DCA 2018) (refusing to rely on parol evidence where there was "no extrinsic fact or extraneous circumstance that changed the parties' understanding of the contract").

      Second, even if the policies were somehow relevant, Lopez places more weight on them than they will bear. Lopez states that the Progressive Select "Florida Motor Home Policy" and the Progressive Express Insurance Company "Commercial Auto Policy" are "identical in relevant parts to the Policy," Opp. at 7, but that is not true. Unlike Lopez's Policy, those policies are "stated amount" policies—that is, they required payment of a stated amount under certain

circumstances, even when the stated amount exceeded the amount of loss. For example, under the Motor Home Policy, depending on the coverage selected, Progressive Select could have been obligated to pay the full purchase price of the motor home whether or not that amount aligns with the amount of loss. *See* Dkt. 103 at Ex. B, Progressive Select Motor Home Policy Form 9638 FL (07/10) at Pgs. 21–23 (Pgs. 50–52 of the PDF). The same goes for the Commercial Auto Policy, which required payment of a stated amount in the event that the financing on the vehicle exceeds ACV. *See* Dkt. 103 at Ex. C, Progressive Express Commercial Auto Policy Form 6912 (02/19) at Pg. 20 (Pg. 123 of the PDF). When an insurer is potentially required to pay *more* than the amount of loss, it makes sense to state specifically that the payment is contingent on transfer of salvage title. But that is not how Lopez's Policy works. Lopez's Policy only requires payment of the "loss," and Progressive does not require insureds to transfer title to receive that payment. SMF ¶¶ 15–16.

Third, Lopez's reliance on amendments to Progressive Select's Personal Auto Insurance Policy from fourteen years ago is also misleading. Lopez states that the change to the "limits of liability" provision amounts to an "increase in coverage." Opp. at 9. That is also not true. In connection with the filing with the Florida Insurance Commissioner, Progressive Select was required to disclose any "increases" or "decreases" in coverage—as Lopez knows, since he cites those disclosures with respect to the Motor Home Policy. Opp. at 7. The explanatory disclosure that immediately followed the redline that Lopez pulled from 2006 OIR filings—and that is conspicuously excluded from the attachments to Lopez's response—reflects that the change to the limits of liability section was neither an "increase" nor a "decrease" in coverage. *See* Ex. 1 to Resp. Statement of Add'l Facts, filed contemporaneously herewith. At most then, the revision left the amount of coverage unchanged. *See id*. Progressive Select's obligation therefore remains to pay for the *loss* suffered by its insured *up to* the limits of liability, and insureds who wish to do so may transfer salvage title to Progressive Select in exchange for ACV. SMF ¶¶ 15–17, 20–22.

The Court should summarily disregard these undisclosed, irrelevant policies, and instead construe the plain language of the Policy at issue. Under that plain language, Lopez has no claim.

### C.   Lopez Misconstrues Progressive Select's Salvage Practices.

Lopez relies on nationwide training documents and webpages that Lopez admittedly never reviewed to argue that Progressive Select placed an "unwritten condition" on the

resolution of Lopez's own claim. *See* Opp. at 10–11. But these documents are not as Lopez describes them.

First, Lopez asserts that because Progressive Select instructs its adjusters that "title must be resolved 'prior to settling the total loss,'" Progressive Select must "require" insureds to transfer salvage title to Progressive Select as an "unwritten condition" of paying them for their vehicles. *Id.* at 11. That is not accurate. Progressive Select so instructs its adjusters because Florida law, like the law in numerous other states, *requires* insurers to take title to total loss vehicles for purposes of branding the title as salvage. *See* Fla. Stat. § 319.30(3) ("[A]n insurance company that pays money as compensation for the total loss of a motor vehicle or mobile home shall obtain the certificate of title for the motor vehicle."). Plaintiff simply ignores the undisputed evidence that Progressive Select transfers title back to any insured who wants it. SMF ¶¶ 23–24.

Second, Lopez relies on website excerpts that reflect the uncontroversial position that, as required by state law, Progressive Select will need to "obtain the physical title." Peters Dep. Ex. 17, attached as Ex. B. That is not evidence of an "unwritten condition" or that Progressive Select in any way breached the Policy. It is simply more misdirection. Driving home the point, when the webpages were presented to Mr. Lopez himself, he testified: "I cannot recall seeing these before" and that he had "never looked on Progressive's website to see how they handle salvaged vehicles." Lopez Dep. [Dkt. 86-1] at 66:9–67:8.

Finally, Lopez characterizes Progressive Select as relying on "one provision" of the Policy to support its position, Opp. at 12–13, but again, that is simply not true. As demonstrated throughout the briefing in this matter, Progressive Select has shown that, when viewed as a whole, the Policy supports Progressive Select's position. Dkt. 92 at 8–14; Dkt. 100 at 8–16; *see Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) (noting that a policy must be read as a whole and "simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous").

### D.     Lopez's Attempt to Distinguish Persuasive Authorities Fails.

Lopez's counsel have filed lawsuits against at least five other insurers asserting the same claim Lopez asserts here, based on materially identical policy language. Dkt. 100 at 15. Yet, Lopez fails to cite a single case—from Florida or anywhere else—in which a court has adopted his strained interpretation of the Policy. And while Lopez attempts to discredit the case law cited

by Progressive Select as "foreign" and "inapposite," the fact remains that every case to address claims like Lopez's has soundly rejected them.

*Hamby v. State Farm Mutual Auto Insurance Co.* is exactly on point. 137 S.W.3d 834 (Tex. Ct. App. 2004). In that case, the court held that the plaintiff was not entitled to retain his salvage vehicle based on language that is identical to language in Lopez's Policy: the insurer "may keep all or part of the property at the agreed or appraised value." *Compare* Policy [Dkt. 72-1] at 30 *with Hamby*, 137 S.W.3d at 837. Incredibly, Lopez attempts to distinguish *Hamby* by arguing that the insurer offered the insured the option to maintain salvage and received a payment of less than ACV, even though Lopez indisputably had the same option. SMF ¶¶ 23–24. Ultimately, because the *Hamby* case does not support his contorted claim, Lopez posits that some uncited policy language in *Hamby* must have been different. Opp at 14. Lopez's rank speculation about facts not discussed in the *Hamby* opinion provides no basis for the Court to disregard its well-reasoned, directly applicable holding.

Lopez also tries and fails to distinguish the Alabama Supreme Court's decision in *Langford v. Federated Guaranty Mutual Insurance Co.*, 543 So. 2d 675 (Ala. 1989). Lopez points out that the opinion "simply cut and pasted a lower court decision," but even if that is true, it hardly makes the court's reasoning less compelling. And Lopez argues that Florida is somehow different from Alabama because the "rights to the salvage of the motor vehicle in cases of total loss remain with the insured." Opp. at 15. The case Lopez cites, however, does not support that position. *Florida Farm Bureau Cas. Ins. Co. v. Patterson*, 611 So. 2d 558, 558–59 (Fla. 1st DCA 1992) ("*[B]efore any settlement had been reached* between appellant and appellee (and *without appellee's consent or knowledge*), appellant authorized another body shop with which it had a contract to pick up appellee's auto as salvage.") (emphasis added). Instead, the case simply states the obvious: when a third party takes a salvage vehicle without any consent from or payment to its owner *at all*, the owner has a valid conversion claim against the third party.[1] And, as discussed in detail in Progressive Select's Response in Opposition to Lopez's

---

[1] In yet another attempt to shift the focus to extraneous issues, Lopez asserts that, in Alabama, Progressive Select used additional salvage-related language in its policy, citing *Gill v. Progressive Direct Ins. Co.*, 2:06-CV-1151-MEF, 2008 WL 130774, at *3 (M.D. Ala. Jan. 10, 2008). *See* Opp. at 15 n.4. But the *Gill* case, like the "stated amount" policies Plaintiff relies on, involved a "Motor Home Policy" with a provision for "Agreed Value Coverage"—facts left

Motion for Summary Judgment, Florida law is not different than Alabama law in this regard: a judge in this district accepted the reasoning of *Hamby* and *Langford* in rejecting a claim identical to Lopez's in a case filed by Lopez's counsel. *See* Dkt. 100 at 13–14 (examining *Bloomgarden v. Allstate Fire & Cas. Inc. Co*., No. 18-cv-62059-DPG, 2019 WL 2245475 (S.D. Fla. Mar. 15, 2019), *aff'd and adopted in part and modified in part*, 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019) (dismissing claims without prejudice)).

Lopez picks around the edges of the numerous other cases Progressive Select cited in clear support of its position here, such as by arguing that those cases "offered no rationale, citation, or discussion" for their holdings. Opp. at 13, attempting to distinguish *Pawtucket Mut. Ins. Co. v. Gay*, 786 A.2d 383, 386–87 (R.I. 2001); *Allen v. Am. Sec. Ins. Co*., 280 S.E.2d 471, 473 (N.C. Ct. App. 1981); *Kikendall v. Am. Progressive Ins. Co*., 457 So. 2d 53, 58 (La. Ct. App. 1984); *Dwane v. W. Am. Ins. Co*., , 297 A.2d 865, 869 (N.J. Dist. Ct. Essex Cnty. 1972). At bottom, however, each of these cases rejects the very premise of Lopez's case: that an insurer who pays what it owes under an automobile insurance policy is required to pay some additional amount in the event it takes title to salvage.

Finally, Lopez's argument that the Court should interpret "loss" to mean something other than the obvious—*i.e.,* the difference in value of a vehicle before and after an accident—is fatally flawed. Lopez does not cite a single case where a court has found "loss" to have a contrary meaning to how the term is used in his Policy. Instead, Lopez attempts to interject ambiguity by arguing that the "primary" dictionary definition of "loss" means "destruction, ruin." Opp. at 17. The word "loss" as used in the Policy is not ambiguous just because a dictionary may include multiple possible definitions for it. *See City of Pompano Beach v. Beatty*, 222 So. 3d 598, 600 n.1 (Fla. 4th DCA 2017) ("Nor is the provision ambiguous simply because the litigants ascribe different meanings to the language employed—something that occurs every time the interpretation of a contract is litigated."). Indeed, accepting Lopez's definition, Progressive Select would not be required to pay anything to Lopez because, by his own assertions in this lawsuit, his loss vehicle was not destroyed or ruined, but maintained residual value. The only sensible interpretation of the word "loss" in this context, then, "is the diminution of value of something." *Vazquez v. Citizens Prop. Ins. Corp.*, No. 3D18-769, 2019 WL 5406523,

---

unmentioned in Lopez's description of the case. *Gill*, 2008 WL 130774, at *2–4. For the same reasons as the "stated amount" motor home policy, *Gill* is entirely inapplicable. *Supra* Part II.B.

at *3 (Fla. 3d DCA Oct. 23, 2019) (citing *Black's Law Dictionary* (10th Ed. 2014)); *see also Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc*., 286 F.3d 1233, 1244–45 (11th Cir. 2002), *certified question answered sub nom. Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp*., 908 So. 2d 459 (Fla. 2005) ("Florida law indicates that the basic measure of damages for loss to chattels is the difference between the value of the damaged property before and after the casualty."). Again, this is exactly what Lopez received.

**E.     Lopez's Interpretation of the Policy Will Result in Absurd and Unintended Results.**

Lopez has no answer for Progressive Select's assertion that he seeks a double recovery that is contrary to the terms of the Policy, general principles of insurance law, and common sense. Indeed, Plaintiff's own expert concedes that, as a matter of economics, Lopez's theory would "leave him in a position with more cash than the pre-wreck assumed/calculated value of the insured vehicle." Dkt. 103 ¶ 8. Plaintiff simply asserts that these absurd results do not matter because, according to Lopez, the Policy requires them. Tellingly though, Lopez fails to cite a single Policy provision in the entirety of Section II.G of his brief. Nor could he, because again, the Policy did not require Progressive Select to make some additional payment, in excess of ACV, for the salvage value of Lopez's vehicle.

Lopez also entirely ignores the bedrock economic principle that the ACV of a vehicle— or any other asset—necessarily includes its salvage value. *See* SMF ¶¶ 33. Lopez states in his Response to Progressive Select's Statement of Material Facts that pre-loss value and salvage value are "different concepts," but this is a meaningless assertion. Dkt. 103 ¶¶ 32–33. Of course the values are "different," but only because salvage value is necessarily a lesser included amount of the pre-loss loss value—when you buy a car, you do not have to pay extra for the parts. *See* SMF ¶¶ 32–34.

Plaintiff chastises Progressive Select for attaching expert testimony to support the assertion that the pre-loss value of an asset necessarily includes its post-loss value, but this is more muddying of waters that are otherwise clear. Opp. at 15–16. Progressive Select's expert—a risk management and finance professor from the University of Florida—does not purport to interpret the Policy, attest to the proper method of calculating actual cash value, or otherwise define the term. He simply explains that the pre-loss value of a vehicle—however that value is determined—necessarily includes the scrap value of the vehicle. SMF ¶ 33. This is a matter of economics, not a "usurping" of the Court's role.

8

Finally, even Lopez's own definition of "actual cash value" is misleading, because it omits key words from the cases he quotes. Lopez states that Florida law defines "'actual cash value' to be replacement cost less depreciation," Opp. at 16, yet the full quote from the case which Lopez cites is that ACV means "*fair market value or* [r]eplacement cost minus depreciation," *Glover v. Liberty Mut. Ins. Co.*, No. 19-cv-21900, 2019 WL 4917063, at *8 (S.D. Fla. Oct. 4, 2019) (citation omitted). Again, the "fair market value" of a vehicle necessarily encompasses salvage. SMF ¶ 33.

### III.   CONCLUSION

Progressive Select paid Lopez everything that it owed under the plain language of Lopez's Policy. Progressive Select's Motion for Summary Judgment should therefore be granted.

Respectfully submitted, this 27th day of November 2019.

/s/ *Marcy Levine Aldrich*
Marcy Levine Aldrich (FBN 0968447)
Bryan T. West (FBN 83526)
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida 33131
Telephone: 305-374-5600
Telefax: 305-374-5095
marcy.aldrich@akerman.com
bryan.west@akerman.com

Jeffrey S. Cashdan
(*pro hac vice* granted)
Zachary A. McEntyre
(*pro hac vice* granted)
J. Matthew Brigman
(*pro hac vice* granted)
**KING & SPALDING LLP**
1180 Peachtree Street N.E.
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
jcashdan@kslaw.com
zmcentyre@kslaw.com
jbarrett@kslaw.com
mbrigman@kslaw.com

Julia C. Barrett

9

(*pro hac vice* granted)
**KING & SPALDING LLP**
500 W. 2nd Street
Austin, Texas 78701
Tel: (512) 457-2000
Fax: (512) 457-2100
jbarrett@kslaw.com

*Counsel for Progressive Select Insurance Co.*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that a true and correct copy of the foregoing was filed through the CM/ECF system and served through the CM/ECF system this November 27, 2019.

*/s/  Bryan T. West*
Attorney