UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:18-cv-61844-WPD

JONATHAN MORGAN, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

PROGRESSIVE SELECT
INSURANCE CO.,

    Defendant.
_____/

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff, JONATHAN MORGAN ("Plaintiff" or "Mr. Morgan"),[1] on behalf of himself and all others similarly situated, hereby sues Defendant, PROGRESSIVE SELECT INSURANCE COMPANY ("Defendant"), and alleges as follows:

### NATURE OF THE CASE

1. Plaintiff and putative class members each bring the same claim under standardized insurance policies covering damage to motor vehicles ("Policy" or "Policies") Defendant issued in Florida.

2. The insured vehicles at issue in this case have sustained significant property damage covered under the Policy to such extent Defendant has declared each of the insured

---

[1] Mr. Lopez is not represented by undersigned counsel in this action, and this complaint is not filed on his behalf. *See* ECF No. 143.

vehicles a total loss, triggering its obligation to pay the actual cash value of the vehicle to settle the total loss claim under the Policy.

3. When a total loss occurs, Defendant has systematically and uniformly misinterpreted the Policy by requiring owners to transfer ownership of their total loss vehicles in order to obtain the actual cash value payments. The crux of Plaintiff's claim is simple and straightforward: no provision in the Policy allows Defendant to require the surrender of ownership to a total loss vehicle as a condition precedent to receiving an actual cash value payment. In adding a condition on payment of actual cash value that does not exist in the terms of the insurance contract, Defendant has breached the Policy and damaged Plaintiff and the Class. Plaintiff and the Class are entitled to actual cash value payments without this condition to turn over vehicles to Defendant.

4. Accordingly, Plaintiff seeks monetary relief for breach of contract both individually and on behalf of all those similarly situated based on the Defendant's taking of total loss vehicles as a condition of paying actual cash value.

## PARTIES, VENUE, AND JURISDICTION

5. Plaintiff is a Florida citizen, resides in this district, and is *sui juris*.

6. This case arises under Florida law, and all members of the class or class members that Plaintiff seeks to represent in this litigation are individuals bringing claims under Defendant's personal motor vehicle insurance Policies issued in Florida.

7. The value of the putative class claims in the aggregate exceeds $5,000,000.00 exclusive of all costs and attorney's fees.

8. Defendant is incorporated in, has a principal place of business in, and is a citizen of, a state other than Florida.

9. Subject matter jurisdiction is proper in this action based on 28 U.S.C. § 1332.

10. The Court has personal jurisdiction over Defendant because it markets, issues, and sells automobile insurance throughout the State of Florida, is registered to do business including transact insurance business in Florida, and is engaged in substantial, continuous, systematic, and non-isolated insurance business activity within the State of Florida, including Broward County, Florida.

11. Venue is proper in this Court because the individual cause of action accrued here or because the Court has personal jurisdiction over Defendant in this district.

12. All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.

## THE POLICY

13. Defendant sells motor vehicle insurance that provides coverage for property damage done to a vehicle, whether by collision with another vehicle, theft of the vehicle, or from other perils.

14. The Policy providing this property damage coverage that Defendant issued is identified by the alphanumeric version codes including "9611D FL (07/13)." An exemplar of the Policy is attached as **Exhibit A**. Under the general insuring agreement of the Policy, Defendant agrees to insure individuals according to "the terms, conditions, and limitations of the Policy." (Policy, p. 1) (emphasis added).

15. Defendant includes damage coverage in **PART IV** of the Policy, describing the "**DAMAGE TO A VEHICLE**" for the insured vehicle and payments made when certain losses occur. These coverages are called comprehensive and collision coverage respectively.

16.     For **COMPREHENSIVE COVERAGE**, the Policy provides in relevant part the insuring agreement that Defendant "will pay for sudden, direct, and accidental loss to a **covered auto**…not caused by **collision**." Policy at 23 (emphasis in original).

17.     For **COLLISION COVERAGE**, the Policy provides the insuring agreement that Defendant "will pay for sudden, direct, and accidental loss to a **covered auto**…caused by **collision**." Policy at 23 (emphasis in original).

18.     The term "property" is not defined in the Policy. But the term "property damage" is. The Policy defines "Property damage" as "physical damage to, destruction of, or loss of use of, tangible property." Policy at 2.

19.     When in the Policy Defendant refers to amounts Defendant will pay for losses to property it expressly specifies whether the losses are for stolen *or* damaged property.

20.     Under the "**LIMITS OF LIABILITY**" provision, Policy at 28, for both comprehensive and collision coverages, Defendant states that it will pay the lowest of "the actual cash value of the stolen or damaged property at the time of the loss" on the condition of its subtracting the "applicable deductible" from the payment or "the amount necessary to replace the stolen or damaged property…" *Id*. This provision states in pertinent part in ¶ 1a below as follows:

**LIMITS OF LIABILITY**

1. The limit of liability for loss to a **covered auto, non-owned auto,** or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**;

Policy at 28. (Original emphasis).

21. The Policy states in **PART IV** under the heading "**PAYMENT OF LOSS**," Defendant is to "pay for the loss in money" or "[r]epair or replace the damaged or stolen property" at its option. Policy at 30 (emphasis in original). It then states in that same provision, Defendant "may keep all or part of the property at the agreed or appraised value," with no specification that the reference to "property" is for stolen or damaged property. *Id*. (emphasis added). In total, this provision states as follows:

> **PAYMENT OF LOSS**
>
> **We** may, at **our** option:
> 1. pay for the loss in money; or
> 2. repair or replace the damaged or stolen property.
>
> At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.
>
> **We** may settle any loss with **you** or the owner or lienholder of the property.

Policy at 30. (Original emphasis).

## DEFENDANT'S TOTAL LOSS SETTLEMENT PROCESS

22. Plaintiff and each class member have sought coverage for collision and/or comprehensive damage under the Policy. The insured motor vehicles are all "Covered Autos" under the Policy[2] that sustained property damage covered under the Policy, to such extent Defendant declared the vehicle a total loss under the Policy and Defendant's obligations to pay actual cash value on the covered claim were triggered.

23. For these claims, Defendant undertook a routine total loss settlement process.[3] In this process, Defendant has routinely opted to pay "actual cash value" on total loss claims.[4]

---

[2] *See* Policy at 1.

[3] *See generally* https://www.progressive.com/claims/total-loss/ (accessed June 25, 2018).

[4] *See* https://www.progressive.com/claims/total-loss/ (stating in cases of total loss, Defendant pays actual cash value) (accessed June 25, 2018).

24. That process involved declaring the vehicle a total loss, valuation of the vehicle, and a cash settlement payment of purported actual cash value of the totaled vehicle and then taking title to the damaged vehicle prior to and as an added condition of providing the actual cash value payment due under the Policy.

25. There is simply no provision in the Policy that permitted Defendant to require transfer of ownership of the total loss vehicles permanently to Defendant or its affiliate in exchange for actual cash value claims payments already contractually owed by Defendant under the Policy.

### FACTS RELATED TO INDIVIDUAL PLAINTIFF

26. On November 10, 2016, Plaintiff's spouse, Alicia N. Morgan–one of Defendant's insureds under the Policy–was involved in an accident that resulted in collision damage to the insured vehicle. After the accident, she contacted Defendant and made an insurance claim under it to Defendant.

27. At all times material, Plaintiff or his spouse had made payments of premiums under the Policy, and it was in full force and effect at the time of the accident. Plaintiff is also the holder of other Progressive insurance policies for other family automobiles.

28. Plaintiff was personally involved in filing his spouse's claim and was the point of contact in following up and pursuing her claim with Defendant. She assigned her claim under the Policy, and its litigation, entirely and irrevocably to him on December 13, 2019. That assignment is attached hereto as **Exhibit B**.

29. Plaintiff exchanged several emails and spoke on the telephone about the claim with Defendant on several occasions.

30. Defendant eventually covered the claim and declared the vehicle a total loss and offered to pay and paid Alicia N. Morgan what Defendant deemed actual cash value.

31. But in order to receive her payment, Defendant required Alicia N. Morgan to transfer title to the vehicle to Defendant or one of its affiliates. Defendant would not pay her actual cash value without this transfer of title.

32. Defendant required and achieved transfer of title to the vehicle in order for Alicia N. Morgan to obtain her payment for actual cash value, but Defendant did not compensate Plaintiff or Alicia N. Morgan for the value of the totaled vehicle as salvage. Upon information and belief, Defendant or its affiliate then disposed of the vehicle as salvage through Insurance Auto Auctions ("IAA"), for which Defendant or its affiliate was paid some monetary sum based on the sale of the vehicle as salvage minus a fixed administrative charge from IAA. None of this money was ever paid to Plaintiff or Alicia N. Morgan.

**DEFENDANT'S MISCONDUCT IS WIDESPREAD AND TRACKABLE**

33. Defendant's Policy contained standardized pre-printed text; Defendant drafted it; and the Policy is identified by standard alphanumeric codes appearing on each Policy.

34. Interpretation of the Policy is not dependent on the individualized factual circumstances applying to Plaintiff and each class member. Plaintiff's class claim for breach of contract presents a question of law for the Court whose determination and resolution would apply to Plaintiff and all class members across the board.

35. The common injury that Defendant caused Plaintiff and class members stems from a dispute over Defendant's blanket, systematic misinterpretation of the Policy and Florida law and conduct based on its standard practice regarding and related to settling total loss claims and taking title to the insureds' vehicles as a condition to a payment of actual cash value. There is no language in the Policy that allows this systemic practice.

36. Upon information and belief, Defendant tracks the salvage value of the vehicles it declares total losses after they are sold for salvage.

37. For the "Class" defined below, Plaintiff seeks to obtain monetary damages for Defendant's taking of totaled vehicles, which is not permitted under the Policy.

## CLASS ACTION ALLEGATIONS

38. Plaintiff wishes to be designated as a "Class Representative," and as Class Representative brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all other persons similarly situated—defined as follows:

Class:

From five years before the filing of this complaint until the day the Court decides class certification (the "Class Period"), all individuals (1) who have made a claim under the Policy[5] for collision or comprehensive coverage on a vehicle covered under the Policy; (2) Defendant settled the claim paying what Defendant considered "actual cash value" for the covered vehicle; (3) Defendant obtained transfer of title to the vehicle; and (4) Defendant on its own or through a vendor or affiliate, sold the damaged vehicle for salvage or for parts.

Subclass:

Individuals meeting the criteria of the Class defined above when the covered vehicles according to Defendant's records were stolen and recovered.

Plaintiff and these Class members reserve the right to amend the class definitions as discovery proceeds and to conform to the evidence. Excluded from the Class are all members of the judiciary and persons employed by or family members of Plaintiff's counsel.

39. <u>Numerosity (Rule 23(a)(1))</u>. Plaintiff alleges on information and belief that the number of Class members in the Class is so numerous that joinder of them is impractical.

40. At this time, upon information and belief, there are over 50,000 members in the Class, inclusive of Subclass Members. The members of the class will be easily ascertained through Defendant's or its agents' records through the use of their own computer data. Indeed, a simple

---

[5] *See, e.g.,* Exhibit A and substantially similar policies issued in Florida by Defendant.

run of the data will uncover all claims information, including whether the claim is a total loss and the amount the damaged vehicles were sold for at auction.

41. <u>Commonality (Rule 23(a)(2))</u>. There are common questions of law and/or fact applicable to members of the class. These principal common questions include the following, during the class period stated in the class definition:

> a. Whether the Policy clearly and unambiguously permitted Defendant to require transfer of title to total loss vehicles to Defendant in order to obtain an actual cash value payment;
>
> b. Whether Defendant's act of requiring title transfer as a condition to payment of actual cash value breached the Policy; and
>
> c. Whether the Plaintiff and the Class are entitled to monetary damages.

42. <u>Typicality (Rule 23(a)(3))</u>. The claims of the Class Representative are typical of the claims that would be asserted by other members of the Class in that, in proving Plaintiff's claims, Plaintiff will simultaneously prove the claims of all Class members. Plaintiff and each Class member brings a claim for comprehensive and/or collision coverage under the Policy; the result of which Defendant deemed the covered vehicle to be a total loss under the Policy; Defendant paid "actual cash value" on the claim; and Defendant took title to the vehicle in violation of the insurance Policy.

43. <u>Adequacy (Rule 23(a)(4))</u>. Plaintiff has no conflicts of interest and will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, Plaintiff is fully cognizant of its responsibility as Class Representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Each Class counsel has extensive experience in class and/or insurance claims and litigation.

44. <u>Rule 23(b)(3)</u>. This breach of contract action should be certified under subsection (b)(3) because whether Defendant's conduct violates the Policy predominates over any individual

issues affecting Class members. Plaintiff's claim should be certified under (b)(3) also because class representation is superior to other available methods for the fair and efficient adjudication of this controversy.

45.     Rule 23(c)(4).  In the alternative or in addition to Rule 23(b)(3) certification, the Court can certainly certify an issue class with respect to the Defendant's liability on a class-wide basis and then proceed in accordance with the Federal Rules of Civil Procedure and employ other mechanisms at its disposal with respect to individual Class members.

## COUNT I
## BREACH OF CONTRACT

46.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if they were fully alleged herein and further alleges:

47.     Plaintiff brings this count on an individual basis and on behalf of the Class.

48.     Plaintiff satisfied all conditions precedent to this action.

49.     The Policy at issue was an insurance contract and was maintained in full force and effect at all times material hereto.

50.     Plaintiff is an irrevocable assignee of an insured under the Policy, who submitted a claim under the Policy. Defendant covered the claim, declared the covered vehicle a total loss, and Defendant determined the actual cash value for the vehicle.

51.     Defendant breached the Policy by requiring transfer of the damaged vehicle to the Defendant or its affiliate as an added condition in order to obtain the actual cash value payment required under the Policy.  No provision in the Policy allows Defendant to condition payment of actual cash value upon the insured's surrender of title and possession of the vehicle.

52.     As a direct and proximate result of Defendant's breaches of the Policy, Plaintiff and the Class members suffered damages.  Specifically, they permanently lost possession and/or

ownership of their vehicles, which were then sold by Defendant or its affiliate through IAA.

53. As a result of the Defendant's actions, Plaintiff was required to obtain the undersigned counsel and has agreed to pay them a reasonable fee.

54. Plaintiff is also entitled to reasonable attorney's fees and costs pursuant to Section 627.428, Florida Statutes.

WHEREFORE, Plaintiff, individually prays for an order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rule of Civil 23(b)(3) or Rule 23(c)(4);

b. Designating Plaintiff as representative of the Class and his counsel as their counsel;

c. Entering judgment for Plaintiff and the Class for monetary relief, including damages and interest allowed by law;

d. Awarding attorney fees and costs under Section 627.428, Florida Statutes, for prosecuting this action; and

e. Awarding Plaintiff and Class members any other relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiff requests trial by jury on all issues triable before a jury.

Dated:  April 13, 2020                                   Respectfully Submitted,

By: *s/Edward H. Zebersky*
Edward H. Zebersky, Esq. (FBN: 908370)
Mark S. Fistos, Esq. (FBN: 909191)
ZEBERSKY PAYNE SHAW LEWENZ, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, FL  33301
Tel.:  (954) 989-6333
Fax:  (954) 989-7781
Emails:  ezebersky@zpllp.com'
mfistos@zpllp.com; nesponda@zpllp.com

and

Alec Schultz, Esq. (FBN: 35022)
Carly A. Kligler, Esq. (FBN: 83980)
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:  305.740.1975
Facsimile:   305.437.8158
Email:  ashultz@leoncosgrove.com
Email:  ckligler@leoncosgrove.com
Email:  eperez@leoncosgrove.com
Email:  cmanzano@leoncosgrove.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification to all attorneys of record.

/s/ *Edward H. Zebersky*
Edward H. Zebersky (FBN: 0908370)