UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:18-cv-61844-WPD

JONATHAN MORGAN, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

PROGRESSIVE SELECT
INSURANCE CO.,

    Defendant.
_____/

# PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT

Under Rule 23 of the Federal Rules of Civil Procedure and Southern District Local Rule 23.1, Plaintiff, Jonathan Morgan, ("Plaintiff" or "Mr. Morgan"), through counsel, respectfully moves this Court for an order:

(1)     Certifying this action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3), on behalf of the "Class" or "Class Members" defined as:

From five years before the filing of the original complaint on June 28, 2018, until the day the Court decides class certification (the "Class Period"), all individuals (1) who have made a claim under the Policy for collision or comprehensive coverage on a vehicle covered under the Policy; (2) Defendant settled the claim paying what Defendant considered "actual cash value" for the covered vehicle; (3) Defendant obtained transfer of title to the vehicle; and (4) Defendant on its own or through a vendor or affiliate, sold the damaged vehicle at auction or for parts.

Subclass: Individuals meeting the criteria of the Class defined above when the covered vehicles according to Defendant's records were stolen and recovered.

(2)     Appointing undersigned counsel as class counsel under Rule 23(g); and,

      (3)      Appointing Plaintiff as Class Representative.

## I. PRELIMINARY STATEMENT

Existing Eleventh Circuit precedent and voluminous precedent from this Court and sister courts in this District require certification of both of Plaintiff's proposed classes.

Under Florida law, insurance policies are contracts. This case turns on interpretation and breach of an insurance contract containing uniform provisions and is directly analogous to this Court's decisions granting class certification in cases alleging breach of form contracts in *Joffe v. GEICO Indem. Ins. Co.*, No. 18-61361-CIV, 2019 WL 5078228 (S.D. Fla. July 31, 2019) and *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2018 WL 9403428 (S.D. Fla. May 4, 2018) and more generally, *Brink v. Raymond James & Associates, Inc.*, 328 F.R.D. 437 (S.D. Fla. 2018). As the Eleventh Circuit has stated, "[a] breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) (*abrogated on other grounds* by *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008)).

**The Common Facts**. The common facts of this case are straightforward and objective: Each Class Member and Subclass Member was insured under Defendant's uniform insurance contract ("Policy" or "Policies") covering damage to motor vehicles Defendant issued in Florida. The insured vehicle was damaged in an accident to the extent that Defendant declared the vehicle a total loss and adjusted the loss claim under the Policy, paying the insured purported actual cash value minus his or her deductible as required under the Policy. But before the insured would be paid and could receive the check for actual cash value owed under the Policy, Defendant systematically required that its sister company first receive title to and permanent ownership of the damaged vehicle. After title transfer, damaged vehicles were then sold at an auto auction with Defendant garnering the proceeds.

**The Common Legal Questions**. The common legal questions flowing from these facts are likewise straightforward and objective: Plaintiff alleges that Defendant's systematic title and ownership transfer requirement is not found anywhere in the uniform Policy language and Defendant's imposition of this added condition to the Policy payment obligations constitutes a uniform breach of contract for each Class Member. Defendant's uniform Policy language nowhere allows this additional condition to receive actual cash value payments already owed under the Policy. Defendant firmly maintains that several provisions in its Policy allow this practice. To

resolve this dispute, in his Second Amended Complaint (ECF No. 145), Plaintiff prosecutes a single claim against Defendant for breach of contract under Florida law, requesting this Court award the Class, Subclass, and him damages. Resolution of this common legal question based on breach of Defendant's uniform Policy will be identical for each Class Member, and the calculation of damages will be based on a single formula as presented to a jury based on evidence in the Defendant's own records.

**The Volume of Claims**. Class treatment of this case makes sense. During its claims process, Defendant has routinely required that its sister company first receive title to and permanent ownership of the damaged vehicles in connection with over 50,000 claims, and Defendant can identify via its electronic records the insureds involved in these claims as well as the amount paid for those damaged vehicles at auction. It would make no sense for multiple courts to construe the same standard practice and uniform Policy provisions, and it would be neither efficient nor fair to anyone, including Defendant, to force multiple proceedings to hear the same controversy regarding the same uniform terms in the same insurance Policy at the heart of Plaintiff's suit. Litigating the foregoing legal and factual questions of each Class and Subclass Member under the materially identical form insurance contract in this one forum in one fell swoop is the most efficient and sensible way to handle this litigation.

For the foregoing reasons and other reasons detailed below, Plaintiff submits that class certification of his representative claim for Plaintiff's proposed Class and Subclass under Rule 23(a), and 23(b)(3) is reasonable and appropriate.

## II. STATEMENT OF THE CASE

### A. Defendant subjected Plaintiff to a uniform title transfer requirement as a condition of paying actual cash value already owed under the Policy.

Defendant is a Florida-authorized insurer that issues the Policies at issue in Florida that provide coverage for damage to motor vehicles. (ECF No. 148 at ¶¶ 13-14; **Exhibit A**, the "Policy"). On November 10, 2016, Plaintiff's spouse, Alicia N. Morgan–another one of Defendant's insureds under the Policy–was involved in an accident that resulted in collision damage to the insured vehicle. (ECF No. 148 at ¶ 26; ECF No. 135-2 Declaration of Jonathan Morgan ("Morgan Decl.") at ¶ 3). After the accident, she contacted Defendant and made an insurance claim under the Policy to Defendant. (*Id.*). After the claims process began, Ms. Morgan asked her husband and fellow insured under the Policy, Plaintiff here, to take over the handling of

the total loss claim, which he did. (Morgan Decl. at ¶¶ 4-5; **Exhibit B**–Policy Declaration Page; **Exhibit C**–Deposition of Jonathan Morgan ("Morgan Dep.") at 42:21-23). She assigned her portion of the claim under the Policy, and its litigation, entirely and irrevocably to him on December 13, 2019. (*See* ECF No. 148 at ¶ 29; ECF No. 145-2 (assignment copy); Morgan Dep. Ex. 15). Defendant eventually covered the claim and declared the vehicle a total loss and offered to pay and paid Ms. Morgan what Defendant deemed actual cash value minus her deductible. (ECF No. 148 at 30; Morgan Decl. at ¶ 6).

During the claims process, Mr. Morgan told Defendant that he wanted to keep the total loss vehicle. (Morgan Dep. at 59:15-21, 61:6-9, & Ex. 11 thereto). Defendant responded that Mr. Morgan could only keep the damaged vehicle if he reduced his pre-loss actual cash value payment by $3,000, which was apparently what Defendant thought would be the post-loss purchase price of the vehicle expected at auction. (Morgan Dep. at 65:1-25, 66:14-22). Feeling that amount was unreasonable, and without knowledge that the Policy did not permit the actions Defendant took, Mr. Morgan offered to reduce the actual cash value payment by $800 so he could keep the vehicle. (*Id*.). Defendant rejected this offer. And it took the position that for the Morgans to obtain their actual cash value check, Ms. Morgan was required to transfer title, possession, and ownership of the damaged vehicle permanently. (Morgan Decl. at ¶ 7; Morgan Dep. at 62:13-16, 81:13-16, 82:4-10, 83:3-6). Defendant therefore required Ms. Morgan to transfer title and ownership to the totaled vehicle to the Progressive Casualty Insurance Company, one of Defendant's sister entities. (*Id*.; **Exhibit D**–Title Transfer; *accord* ECF No. 72-3 at 15). Defendant would not pay her actual cash value without this transfer of title. (*Id*.). Defendant then disposed of the vehicle at auction through a company called Insurance Auto Auctions ("IAA"). (*See* **Exhibit E**–Amended Response to Morgan's Request to Produce and Interrogatories) at 5; *accord* ECF No. 72-6 at 4).

### B. Defendant Subjected the Class and Subclass to a uniform title transfer requirement as a condition of paying actual cash value already owed under the Policy.

Discovery has established that Progressive uniformly applies this permanent title and ownership transfer requirement to all Class Members and Subclass Members. ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████ (*See generally* **Exhibit F**–████████████████ ████████████████████████████████; **Exhibit G**████████████████████

██████████████████████████. Once Defendant declares insured vehicles total losses, it has—as with Plaintiff—as a general policy and practice—paid to Class Members and Subclass Members what it deemed actual cash value. (*See* **Exhibit H**–Defendant's Response to Plaintiff's First Request for Admissions ("First RFAs") no. 12; **Exhibit I**–Defendant's Response to Plaintiff's First Set of Interrogatories ("First Rog. Resp.") no. 8; Policy at 998, 1047, 1099; Peters Dep. at Exhs. 17-18). But before giving them payment for actual cash value it also systematically required title and ownership to insured's damaged vehicles to be turned over to Defendant or one of its sister companies. (Peters Dep. at 77:8-24 & 78:21-25 ("in exchange for their title, we would hand them a draft in the agreed amount of their vehicle and they would have to sign some documents").

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Also, Defendant's website discussed in the Peters Deposition specifies that an insured *must* transfer title and power of attorney *must* be provided by an insured before Defendant will issue a total loss actual cash value payment to an insured. Peters Dep at 146:14-147:3 ("What paperwork do you need before you can issue [my total loss settlement] payment?"–Defendant tells insureds that it will need to obtain physical title to their vehicles).[1]

No proceeds from the post-loss sale of these damaged vehicles or other similar monies are ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Morgan Decl. at ¶ 7; Ex. C at no. 2). As a general practice and procedure, Progressive has also believed that an insured may keep the total loss vehicle, but if the insured

---

[1] *See* https://www.progressive.com/claims/total-loss/ (accessed June 25, 2018) (cited in ECF No. 145 at nn. 3-4). Defendant admits that this webpage "speaks for itself." (*See* ECF No. 148 at ¶ 23); *see also* https://www.progressive.com/answers/what-happens-when-car-is-totaled/ (accessed 7/15/19, 9:50:42 EDT AM) (In answering the question, "What happens to the totaled vehicle?," Defendant states. [t]he car's title is transferred to the insurance company handling the claim and they dispose of the salvage vehicle.").

retains it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, in those instances Defendant has only paid the insured actual cash value minus not only a deductible but also an amount for purposed post-loss "salvage value." (Peters Dep. at 106:12-21, 107:2-10; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Morgan Dep. at 65:1-25, 66:14-22).

### C.  The common dispute centers on Defendant's uniform insurance Policy text.

The common dispute in this case centers on the standardized Policy text, which appears in Exhibit A.  *On the one hand*, Plaintiff contends that Defendant has inserted two different, but related, payment conditions into their Policy: (1) a provision permitting Progressive to reduce the actual cash value payments if the Class Member keeps the vehicle; and (2) a provision requiring the  permanent transfer of title, ownership, and possession to the vehicle in order to obtain an actual cash value payment.  Plaintiff alleges that Defendant breached the Policy when it added to the Policy's insuring agreement payment term that it will pay insureds "the actual cash value of the stolen or damaged property at the time of the loss" minus the "applicable deductible," another condition that Defendant will only pay the actual cash value of the total loss vehicle on the condition that the ownership of the automobile is permanently transferred to Defendant or its sister company. (ECF No. 148 at ¶¶ 3, 15-25, 35, 41, 51).  Plaintiff believes that this condition does not clearly and ambiguously appear anywhere in the Policy as it must under Florida law. *See Signor v. Safeco Ins. Co. of Illinois*, No. 19-61937-CIV, Order on Motion to Dismiss, ECF No. 40 at 15 (S.D. Fla., March 23, 2020).  *On the other hand*, Defendant contends several provisions of the form Policy support its conditioning payment of actual cash value on taking insureds' vehicles. (*See* **Exhibit J**, Defendant's Response to Plaintiff's Second Request for Production of Documents and Interrogatories ("Second Rog. Resp.") Interrog. No. 2).

Plaintiff disagrees that those provisions permit Defendant's actions here.   Plaintiff requests that the Court interpret the uniform Policy provisions, enter a judgment against Defendant for breaching the Policy, and award Plaintiff and Class Members and Subclass Members damages as a result of the breach. (ECF No. 145 at ¶¶ 3-4, 37, & Count I). Plaintiff's common damage theory is that each Class Member is owed damages calculated on the gross amount paid for the damaged vehicle at auction sale minus the $85 or other flat administrative fee for the sale of the vehicle, which Defendant pays its only auctioneer IAA. (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Exhibit K** ▮▮▮▮▮▮▮▮▮▮▮▮▮

(calculating damages based on gross recovered amount); **Exhibit L**, ███████████████████████

### III. LEGAL STANDARDS

#### A. Analytical Approach to Class Certification

Federal Rule of Civil Procedure 23 governs the class certification process. "In deciding whether to certify a class, a district court has broad discretion." *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 678 (S.D. Fla. 2009) (citation omitted). Doubts about class certification "are to be resolved in favor of certifying the class." *Id.* at 678. Class certification is not summary judgment. *See Drossin v. Nat'l Action Fin. Services, Inc.*, 255 F.R.D. 608, 613 (S.D. Fla. 2009). Although the certification analysis must be "'rigorous' and may entail some overlap with the merits of the plaintiff's underlying claim…Rule 23 grants courts no license to engage in free-ranging merits. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (internal citations omitted).

#### B. The Elements of Rule 23 Certification

Courts in this Circuit interpret Rule 23 to incorporate both implicit and explicit elements. An implicit element is that the proposed class be "adequately defined and clearly ascertainable"––known as "ascertainability." *Brink*, 328 F.R.D. at 443. "If the district court determines that th[e] [ascertainability] requirement has been met, it is then obliged to examine the [explicit] prerequisites set forth in Federal Rule of Civil Procedure 23(a)." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). The four explicit elements of Rule 23(a) are: "(1) the class must be so numerous that joinder of all members is impracticable ('numerosity'); (2) questions of law or fact common to the class must exist ('commonality'); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ('typicality'); and (4) the representative parties must fairly and adequately protect the interests of the class ('adequacy of representation')." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 668 (S.D. Fla. 1997).

In addition, the court must find that the case meets one of the explicit requirements under subparts (1), (2), and/or (3) of Rule 23(b) and/or Rule 23(c)(4). *Brink*, 328 F.R.D. 437, 442. Under Rule 23 subpart (b)(3), certification is appropriate if two requirements are met: (i) the questions of law or fact common to the members of the class predominate over individual issues of law or fact (known as "Predominance"); and (ii) if a class action is superior to other available methods

for the fair and efficient adjudication of the controversy (known as "Superiority"). *See Brink*, 328 F.R.D. at 442.

IV.   **ARGUMENT**

The proposed Class and Subclass are ascertainable; Plaintiff has met all requirements of Rule 23; and this case should be certified as a class action based upon Existing Eleventh Circuit precedent and voluminous precedent from this Court and sister courts in this District.

**A. The proposed Class and Subclass are ascertainable.**

To meet the "Ascertainability" requirement, a plaintiff must be able to identify the class members by reference to objective criteria in an administratively feasible way. *Joffe,* 2019 WL 5078228, at *4, n 1 (citing *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015)). The "court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Karhu*, 621 F. App'x at 952 (concurring opinion). A plaintiff may demonstrate a proposed class is ascertainable by referring to a defendant's records. *See Carriuolo v. Gen. Motors LLC*, No. 14-61429-CIV, 2015 WL 12434325, at *3 (S.D. Fla. July 9, 2015); *see also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525–26 (6th Cir. 2015).

Here, Plaintiff's proposed Class and Subclass are clearly ascertainable based on objective criteria and Defendant's electronic records. The Policy text that both Plaintiff and Defendant rely on has not varied. (*See* Ex. A at 976, 1020, 1068 (Insuring Agreement), 994, 1042, 1094 (Coverages), 998-1000, 1047-48, 1099-1100 (Limit of Liability), 1000, 1049, 1100 (Payment of Loss), 1004, 1052, 1103 (Inspection), 1009, 1058, 1110 (Duty to Preserve)).  Defendant only settles total loss claims with claimants it has confirmed are owners of the insured vehicles. (Peters Dep. at 63:1-5). The Class is defined as total loss claimants from whom Defendant obtained title to their vehicles; and "Defendant on its own or through a vendor, sold the damaged vehicle at auction or for parts."  The Subclass only adds the criterion that the vehicle be stolen and recovered. Defendant maintains searchable total loss claims data from which it can identify claimant names and addresses of these Class and Subclass Members, identify their claim and policy numbers, identify whether their vehicles had been stolen and if the vehicle has been recovered, identify that it took title to their vehicles, identify that it paid them what it determined to be actual cash value, identify whether the insureds retained the vehicles after loss, and identify the gross monies paid for the damaged vehicle and the net paid to Defendant for each one. (*See* First Rog. Resp. nos. 2,

8

4; *see also* First RFAs nos. 2, 4, 12; Ex. J (excerpt from spreadsheet); **Exhibit M**, ▮▮▮▮▮▮ (showing searchable data fields available to Defendant).[2]  The Class and Subclass Plaintiff seeks to certify are thus easily ascertainable.

    **B. The Proposed Class and Subclass Satisfy the Requirements of Rule 23(a).**

        **1. Rule 23(a)(1)—Numerosity—is Satisfied.** To satisfy Rule 23(a)'s first requirement—numerosity—a movant must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "There is no rigid standard for determining numerosity." *Hicks v. Client Services, Inc.*, 07-61822-CIV, 2008 WL 5479111, at *3 (S.D. Fla. Dec. 11, 2008). "The Court is given discretion to make assumptions…" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (citation omitted).  Parties seeking class certification need not know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Roth*, 2018 WL 9403428 at, * 3.  The Eleventh Circuit has held, "generally, joinder of fewer than twenty-one plaintiffs is considered practicable and joinder of more than forty impracticable." *See Brink*, 328 F.R.D. at 444. (citation omitted). "[W]here the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 3 Newberg on Class Actions § 7.22 (4th ed. 2002) (Westlaw).

    Plaintiff can easily demonstrate that individual joinder would be impracticable. Based on Defendant's records, Defendant has admitted that for the five-year time period ended on June 28, 2018, title to damaged total loss vehicles was permanently transferred to Defendant—or its sister entity—in connection with approximately 54,622 unique total loss claims. (*See* First Rog. Resp. no. 7; *see also* ECF No. 1-3 at ¶¶ 5-6).  Of that number common sense dictates that based on these many claims, behind them exists tens of thousands of claimants making up the Class to such extent that individual joinder of its members is impracticable and Rule 23(a)'s numerosity requirement is met.  The same is true for the Subclass: Based on the full spreadsheet (excerpted in Ex. L) Defendant provided, there appear to be over 1800 claimants whose vehicles were stolen and

---

[2] Exhibit L is an excerpt from a larger spreadsheet that Defendant produced that provides this information or which can be expanded to provide it. The first page of the exhibit is the Data Dictionary explaining the fields in the spreadsheet and those available to Defendant. Defendant's counsel via email on August 1, 2019, confirmed that Defendant can provide the names and addresses of insureds whose claims are listed in the spreadsheet. *See* **Exhibit N**.

recovered. (ECF No. 106-3 (sealed version of ECF No. 103-1) at ¶ 12)).  Numerosity is easily satisfied.

**2. Rule 23(a)(2)—Commonality—is Satisfied.** To satisfy Rule 23(a)'s second requirement—commonality—a movant must demonstrate that "there are questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added).  Plaintiffs face a "low hurdle" in bearing this "light" burden, as commonality "does not require that all questions of law and fact raised be common." *Sanchez-Knutson v. Ford Motor Co.,* 310 F.R.D. 529, 537 (S.D. Fla. 2015). Quantitatively, a single common question "whose resolution will affect all or a significant number of the putative class members" may establish commonality. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir.2009); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (finding a single common question satisfies the commonality and that a class-wide proceeding must be able to "generate common answers apt to drive the resolution of the litigation" (citation omitted)). Qualitatively, the "common contention [must be]…of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This is easily shown when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members allegedly in violation of a form contract. *See Joffe*, 2019 WL 5078228, at *4 (total loss case involved alleged breach of materially identical insurance policy satisfied commonality); *Roth*, 2018 WL 9403428, at *3  (same); *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Co.*, 263 F.R.D. 670, 679 (S.D. Fla. 2010) (standardized course of conduct allegedly in violation of insurance policy that affects all class members satisfied commonality); *Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001) (finding substantial common questions of law and fact regarding (1) the standardized forms, procedures and disclosures made or required and (2) the legal effect of those disclosures satisfied commonality).

Plaintiff's Second Amended Complaint states several common factual and legal issues.  Each Class Member and Subclass Member is Defendant's insured  (1) that submitted a comprehensive and/or collision claim to Defendant on a vehicle covered under the Policy; (2) Defendant settled the claim of the insured paying the insured what Defendant considered "actual cash value" for the vehicle; (3) Defendant or its sister entity obtained permanent ownership and title to the vehicle as a condition to payment of the actual cash value; and (4) Defendant on its own or through a vendor, sold the damaged vehicle at auction. The Subclass adds only one criterion

that the vehicle be stolen and recovered. Under these common factual circumstances, Plaintiff alleges that Class Members and Subclass Members were all similarly affected by a common course of conduct under a form insurance contract—namely that Defendant systematically added and enforced to the Policy's uniform insuring agreement payment term that it will pay insureds "the actual cash value of the stolen or damaged property at the time of the loss" minus the "applicable deductible," another condition that Defendant will only pay the actual cash value of the total loss vehicle on the condition that title and ownership to the vehicle is permanently transferred to Defendant or its sister entity. Another common issue in the case is that Defendant adds the condition to its Policy that if the insured wants to keep the damaged vehicle, her actual cash value payment will decrease by the potential sale price for the vehicle at auction.[3]

Based on these added conditions, Plaintiff alleges a single count for breach of Defendant's form insurance contract, which really boils down to legal interpretation of a contract by the Court. (*See* **Exhibit O**–Trial Plan at 4). Plaintiff contends that both conditions are terms Defendant has unilaterally inserted into its Policy. The underlying common legal question for each Class Member and Subclass Member is whether Defendant's uniform Policy language clearly and unambiguously allows it to impose the foregoing conditions on the already existing payment obligations of the Policy. Follow-on legal questions include: (a) Whether Defendant's act of requiring title transfer as a condition to payment of actual cash value breached the Policy; and (b) whether damages are appropriate using a simple formulaic approach to damage determination as proposed above—applying simple arithmetic to Defendant own records—i.e., the gross amount paid for the vehicle at auction minus IAA's fixed administrative fee. Using long-standing rules of insurance policy interpretation (*See* Ex. O at 4), the Court's determination of these questions will resolve core issues central to the validity of each claim of Plaintiff and Class Members and Subclass Members in one stroke. Plaintiff therefore satisfies the low hurdle of the commonality requirement under Rule 23(a)(2).

       **3. Rule 23(a)(3)—Typicality—is Satisfied.** To satisfy Rule 23(a)'s third requirement––typicality—a movant must show that "the claims or defenses of the representative parties are

---

[3] As has been argued to this Court already, Defendant previously included this condition in its Policy but in 2006 removed the provision. ECF No. 103 at 11. Defendant told the Florida Office of Insurance Regulation the change might cause a slight increase in coverage to insureds. Defendant seems to be still operating under a common course of conduct based on provisions of its Policy that existed in 2005 but no longer exist.

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require that the claims of the class representative be identical to those of the class at large. *Joffe*, 2019 WL 5078228, at *4. Rather, typicality "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id*.

Plaintiff is a Class Member, has suffered the same injury as Class Members and Subclass Members, and his claim rests on the same legal theory for breach of the Policy. He was insured under Defendant's Policy and has a total loss claim determined by Defendant. To receive an actual cash value payment already due under the Policy, Defendant added a condition to the Policy requiring Ms. Morgan (assignor to Plaintiff), as it did each Class Member and Subclass Member, to transfer title and ownership of the total loss vehicle. The vehicle was then sold at auction. Because Defendant has engaged in a pattern and practice of adding a payment condition to the Policy that has affected Plaintiff as it did Class Members and Subclass Members—Plaintiff shares with them a common legal injury based on the same theory of breach of the Policy. *See Allianz Ins.,* 176 F.R.D. 659, 672–73; *see also Ruderman*, 263 F.R.D. at 681. By pursuing his own claim for breach of the Policy based on Defendant's added payment condition contrary to the plain language of the Policy, Plaintiff will necessarily advance the interests of the proposed Class and Subclass. Consequently, Plaintiff satisfies Rule 23(a)(3)'s typicality requirement.

**4. Rule 23(a)(4)—Adequacy of Representation—is Satisfied.** To satisfy Rule 23(a)'s fourth and final requirement—adequacy of representation—a movant must show that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement applies to both the named plaintiffs and their counsel." *Ruderman*, 263 F.R.D. at 681. "To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class." *Sanchez-Knutson*, 310 F.R.D. at 540 (citation omitted). "[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Carriuolo*, 823 F.3d at 989 (citation omitted). Adequacy of representation by class counsel is usually presumed absent evidence to the contrary. *Sanchez-Knutson*, 310 F.R.D. at 540. (citation omitted).

No actual or potential conflicts exist between Plaintiff and the Class Members and Subclass Members in this case; Plaintiff has previously submitted a declaration to that effect. *See* Morgan Decl. at ¶¶ 6-14.  Plaintiff was an insured under the Policy; he sat for deposition in the case; and he assisted and reviewed documents in the case including the Second Amended Complaint, expressed the intention to prosecute the case on behalf of the Class, and otherwise participated by producing documents and information relating to the subject accident, claim he pursued, and Policy. (*Id.*; Ex. B; *see also* Ex. C at 88:18-25 through 89:1-10, 94:3-25 through 96:10).  Therefore, the conclusion that Plaintiff is an adequate representative of the Class and Subclass is warranted. Plaintiff's adequacy is also bolstered by its choice of qualified counsel. Plaintiff has retained counsel well versed in complex class litigation, successfully handling class and complex civil cases in this Court and others, many of which included insurance matters.  Considering this experience, the Court should find Plaintiff's attorneys are qualified to serve as class counsel for Rule 23(a)(4) purposes.

Besides satisfying Rule 23(a)(4), Plaintiff's attorneys satisfy the considerations of Rule 23(g). Rule 23(g)(4) requires the Court to appoint counsel who will fairly and adequately represent the Class and Subclass, considering, among other things: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." As demonstrated by their firm resumes and declaration, Plaintiff's counsel are highly competent experienced class-action litigators and trial attorneys, who have been appointed class and lead counsel in numerous cases certified in federal court and state courts involving contract and insurance claims and others.[4] Therefore, the adequacy requirements of Rule 23(a)(4) and Rule 23(g)(1)(A) are satisfied. Plaintiff should be appointed Class and Subclass representative and his counsel appointed counsel for the Class and Subclass.

### C.  The Requirements of Rule 23(b)(3) are Met.

Besides Rule 23(a), Plaintiff seeks certification under Rule 23(b) subpart (3), requiring "questions of law or fact common to the members of the class predominate over any questions

---

[4] *See* Declaration of Edward H. Zebersky, **Exhibit P**.

affecting only individuals members" and a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**. Courts routinely find that cases involving the legal interpretation of a uniform contract satisfy the predominance requirement. Indeed, "[i]nterpretation of uniform material insurance provisions that will determine liability is particularly indicative of predominance." *Roth*, 2018 WL 9403428 at, * 5 (citing *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004)). As one member of this Court has observed in granting class certification for claims involving an automobile insurance policy, "[w]hen viewed in light of Rule 23, claims arising from interpretations of a form [insurance] contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Leszczynski,* 176 F.R.D. 659, 672 (form insurance policy) (quoting *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983); *see also In re Med. Capital Sec. Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (collecting cases, including Eleventh Circuit cases, noting "[c]ourts routinely certify class actions involving breaches of form contracts"); *Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2016 WL 7477734, at *4 (S.D. Fla. Dec. 8, 2016) (predominance found based on alleged violation of form condo declaration).

Importantly, predominance does not require that "all questions of fact or law be common…only that some questions are common and that they predominate over individual questions." *Brink*, 328 F.R.D. at 447 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The inquiry into whether common questions predominate over individual questions focuses on "whether there are common *liability* issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700 (citation omitted) (emphasis added). "The existence of a few individual questions will not negate the predominance of common issues." *Id.* (citation omitted). The presence of individualized damages "generally do not defeat a finding that common issues predominate." *Roth*, 2018 WL 9403428 at, * 5; *Brink*, 328 F.R.D. at 447 (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)). "[C]laims for breach of contract are peculiarly driven by the terms of the parties' agreement." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010). Thus, in their predominance determinations, when the underlying claim is based on an alleged breach of a form contract, courts focus on the alleged breach based on the contract language, not damages,

which may be "highly individualized." *See Allapattah*, 333 F.3d at 1260-61 (citation omitted) (form contract); *see also Ruderman*, 263 F.R.D. at 686 (form insurance policy).

Predominance is satisfied here. Defendant's Policy is a written form contract that as Defendant admits, "speaks for itself." (ECF No. 148 at ¶¶ 14-21, 33; § 627.402(3), Fla. Stat.). The Policy contains standardized, preprinted text, and Defendant identifies it and similar other versions of its insurance policies by standardized alphanumeric coding. (Ex. A; ECF No. 148 at ¶¶ 14-21, 33). The provisions that Defendant relies on to support its practice are uniform across Policy versions, as is its standardized practice in adjusting total loss claims. The common questions this case presents, which are listed in the discussion of Rule 23(a)(2)'s "commonality" element above, directly affect Class Members' and Subclass Members' abilities to establish liability and obtain relief, and Defendant has engaged in a common course of conduct subject to class-wide proof. *See Dear*, 2016 WL 7477734, at *4 (because alleged violation was based on form contract, liability would provable class-wide supporting predominance). Whether Defendant breached the Policy by taking title to vehicles as condition of payment of actual cash value is the central liability question equally applicable to all Class Members and Subclass Members. A "yes" to that question is essential to resolving Defendants' liability for Plaintiff and each Class Member and each Subclass Member. Each Class Member's and Subclass Member's claim will rise or fall based on the Court's answer. Therefore, Predominance is satisfied.

**2. Superiority is satisfied**. Plaintiff has also satisfied the superiority requirement of Federal Rule of Civil Procedure 23(b)(3), which requires a court to consider whether "'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Amgen Inc.*, 68 U.S. 455, 460 (quoting Rule 23(b)(3)). The Superiority requirement comes down to whether the class treatment would be advantageous, makes sense, and is manageable.[5] This factor is closed linked to predominance, "because when common issues predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle for adjudicating the plaintiffs' claims." *Roth*, 2018 WL 9403428 at, * 6; *Brink*, 328 F.R.D. at 448 (citation and internal quotation marks omitted). "Accordingly, the conclusion that common issues

---

[5] Rule 23(b)(3) states several overlapping factors courts review when discerning superiority, however, the list is not exhaustive and other factors are often considered or stated in different terms. *See Walco Invs. v. Thenen*, 168 F.R.D. 315, 337 (S.D. Fla. 1996); *see also Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) (stating superiority focuses on "advantages" of class treatment).

of law and fact predominate…strongly militates in favor of a class action as a superior means of litigating this case." *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 671-72 (S.D. Fla. 2010).

Again, the predominant common liability question in this action flows from duties and rights under a form agreement—the Policy—applying to all Class Members and Subclass Members and whether their total loss vehicles may be taken as a condition to paying their actual cash value. Resolving this common question presented by tens of thousands of Class Members' and Subclass Members' claims on Defendant's form Policy in one lawsuit would require far fewer judicial and litigant resources than requiring potentially tens of thousands of individual lawsuits to decide the same question over and over again. It would make no sense for court after court to construe the same Policy provisions regarding the same legal issues surrounding this proposition, and it "would be neither efficient nor fair to anyone, including the [Defendant]… to force multiple trials to hear the same [liability] evidence*." Fournigault v. Independence One Mortg. Corp.*, 234 F.R.D. 641, 648 (N.D. Ill. 2006) (quotation omitted); *Moore v. GNC, Holdings, Inc.*, No. 12-61703-CIV, 2013 WL 12237784, at *7 (S.D. Fla. Oct. 17, 2013) ("district court acted well within its discretion in concluding that it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly") (citing *Klay*, 382 F.3d at 127).; *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (holding separate trials for claims that could be tried together would be costly, inefficient, and burden the court system by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts).

Moreover, Plaintiff does not anticipate any manageability problems resulting from certifying Class Member and Subclass Member claims for class treatment.[6] Defendant has the names and addresses of total loss claimants, and Class Members and Subclass Members may be identified and may be notified via direct mail, publication, or email or a combination thereof and the basic foundation for a damage analysis is also contained in the Defendant's electronic records. *See Palma v. Metropcs Wireless*, Inc., No. 8:13-CV-698-T-33MAP, 2014 WL 235478, at *2 (M.D. Fla. Jan. 22, 2014) ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class."); Manual For Complex Litigation,

---

[6] Plaintiff has submitted an Exemplar Trial Plan to further support this point. *See* Ex. O.

Fourth §21.311 (2004) ("Many courts include the Internet as a component of class certification and class settlement notice programs."). If Defendant does not have email addresses for Class Members and Subclass Members, Plaintiff suggests those individuals may be sent the postcard notice, via first class mail with more robust information published online as cited in the postcard. *See* Newberg on Class Actions § 8:28 (5th ed.) (commenting that parties may reduce costs of notice by sending postcards instead of envelopes and collecting cases approving postcard notice); *see also Burrows v. Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) (approving postcard notice combined with website notice).

Also, again, Defendant's records show that material Policy provisions have not changed and that damages for each Class Member and Subclass Member can be determined formulaically and precisely. Defendant tracks the details of each total loss claim including the amount each damaged vehicle sells at auction along with the fixed costs charged to sell the vehicle at auction on which damages may be based. The extent to which any award of damages must be adjusted to each individual is not prohibitive. Individual damage determination "has traditionally been seen as an inappropriate barrier to applying the efficiencies of Rule 23… because there are adequate judicial processes for addressing the problem." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). If Plaintiff can establish liability and individual damage determinations become at issue "the Court may either appoint a master to resolve actual damage[] [disputes]" or employ other management techniques commonly used in class actions. *See Fabricant*, 202 F.R.D. at 317; *Carnegie*, 376 F.3d at 661; *see also* Ex. O at 5-6.

Therefore, Rule 23(b)(3) Superiority and Predominance are satisfied.

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court enter an order granting this Motion, certifying the claims of the Class and Subclass under Rule 23(b)(3), appointing Plaintiff as Class Representative for them, and appointing Plaintiff's counsel as Class and Subclass Counsel, and for such further relief as the Court deems just and proper.

Dated: May 20, 2020

                                       Respectfully Submitted,

                                       By: *s/Edward H. Zebersky*
                                          Edward H. Zebersky, Esq. (FBN: 0908370)
                                          Mark S. Fistos, Esq. (FBN: 909191)

ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, FL 33301
Tel.: (954) 989-6333
Fax: (954) 989-7781
Emails: ezebersky@zpllp.com;
mfistos@zpllp.com; ndiaz@zpllp.com

and

Alec Schultz, Esq. (FBN: 35022)
Carly A. Kligler, Esq. (FBN: 83980)
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, FL 33134
Tel.: (305) 740-1975
Fax: (305) 437-8158
Emails: aschultz@leoncosgrove.com;
ckligler@leoncosgrove.com;
eperez@leoncosgrove.com;
cmanzano@leoncosgrove.com

***Attorneys for Plaintiff***